Carmine VASILE, Plaintiff,

v.

DEAN WITTER REYNOLDS INC., Norman P. Weiss, Esq., Hon. Alan D. Oshrin, and Hon. William L. Underwood Jr., individually and in their official capacities, Defendants.

No. 97–CV–7241(JS).

United States District Court,
E.D. New York.

Sept. 14, 1998.

Carmine Vasile, Patchogue, NY, pro se.

*MEMORANDUM AND ORDER*

SEYBERT, District Judge.

Presently before the Court are fourteen pending motions. To ensure completeness and clarity, and for administrative purposes, it is necessary to identify in summary fashion each pending motion.[1]

## BACKGROUND

Plaintiff commenced the instant action on December 9, 1997, alleging the following claims:

1. Against Defendant Dean Witter Reynolds, Inc., ("Dean Witter"), for interstate fraud, conspiracy, violations of a fiduciary duty, criminal enterprise, money laundering, racketeering, mail fraud, and embezzlement, stemming from Dean Witter's alleged failure to obey a state court injunction and its subsequent release via embezzlement in May, 1990, of plaintiff's commingled marital assets in account number 201–3884, valued in excess of $170,000.00. As against Defendant Dean Witter, Vasile prays to recover $1,000,000.00 in compensatory damages and $1,000,000.00 in punitive damages;

2. Against Defendant Norman P. Weiss, Esq., for interstate fraud, criminal enterprise, malicious abuse of legal process, slander, money laundering, and the intentional infliction of emotional distress, for his role in wrongly accusing plaintiff of embezzling the assets of Robyn Enright, before they were embezzled by others. As against Defendant Weiss, Vasile prays to recover $6,000,000.00 in compensatory damages and $6,000,000.00 in punitive damages;

3. Against Defendant Justice Alan D. Oshrin, for breaching a ministerial duty, civil rights violations, due process violations, conspiracy, obstruction, malicious abuse of legal process, and subornation. As against Defendant Justice Oshrin Vasile prays to recover $1,000,000.00 in compensatory damages and $1,000,000.00 in punitive damages;

4. Against Defendant Justice William L. Underwood, for breaching a ministerial duty, civil rights violations, due process violations, conspiracy, and subornation. As against Defendant Justice Oshrin Vasile prays to recover $1,000,000.00 in compensatory damages and $1,000,000.00 in punitive damages.

1.

| DOCUMENT NUMBER | DATE FILED | MOTION DESCRIPTION |
| --- | --- | --- |
| 11–1 | 12/15/7 | Plaintiff's motion for partial summary judgment as against the state actor Defendants |
| 13–1 | 12/15/97 | Plaintiff's motion for partial summary judgment against Defendant Dean Witter |
| 15–1 | 12/15/97 | Plaintiff's motion for partial summary judgment against Defendant Norman Weiss |
| 24–2 | 12/19/97 | Plaintiff's motion for summary judgment |
| 36–1 | 1/21/98 | Plaintiff's Rule 60(b) motion and motion to punish |
| 53–1 | 3/16/98 | Defendant Dean Witter's motion to dismiss |
| 61–1 | 3/17/98 | Defendant Weiss' motion for sanctions |
| 61–2 | 3/17/98 | Defendant Weiss' motion to enjoin Plaintiff from bringing further motions or applications |
| 63–1 | 3/17/98 | Defendant Weiss' motion to dismiss |
| 63–2 | 3/17/98 | Defendant Weiss' motion in opposition to Plaintiff's motion for summary judgment |
| 63–3 | 3/17/98 | Defendant Weiss' motion to enjoin Plaintiff from continuing bringing applications and motions without court approval or unless represented by an attorney |
| 69–1 | 3/20/98 | Defendant Oshrin's motion to dismiss |
| 69–2 | 3/20/98 | Defendant Oshrin's motion for summary judgment |
| 76–1 | 3/17/98 | Plaintiff's motion for partial summary judgment |

## DISCUSSION

### I. *Standards Governing a 12(b)(6) Motion to Dismiss*

A district court should grant a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim only, if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)); *Annis v. County of Westchester, N.Y.*, 36 F.3d 251, 253 (2d Cir.1994).

In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these allegations as true. *H.J. Inc.* at 249, 109 S.Ct. at 2906; *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch. Constr. Auth.*, 23 F.3d 636, 639 (2d Cir.1994); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (citing Fed.R.Civ.P. 8(a)(2) to demonstrate liberal system of 'notice pleading' employed by the Federal Rules of Civil Procedure).

The court's duty merely is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980); *accord Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). The appropriate inquiry, therefore, is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686; *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 124 (2d Cir.1991) (plaintiff is not compelled to prove his case at the pleading stage).

■ Additionally, it is not required that a claimant set out in detail the facts upon which he or she bases a claim, but only a statement of his or her claim that will give defendant "fair notice of what [the] claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Therefore, where a complaint is filed that charges each element necessary to recover, dismissal of the case for failure to set out evidential facts can seldom be warranted. *United States v. Employing Plasterers' Ass'n of Chicago*, 347 U.S. 186, 188–89, 74 S.Ct. 452, 98 L.Ed. 618 (1954). Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, insufficient to state a claim. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987).

■ When deciding a Rule 12(b)(6) motion, courts are directed to treat the motion as one for summary judgment if matters outside the pleading are presented to and not excluded by the court. *Sua sponte* conversion of a motion to dismiss into a motion for summary judgment is appropriate where "the losing party is not taken by surprise by the court's action." *Blassingame v. Secretary of Navy*, 811 F.2d 65, 74 (2d Cir.1987). In the instant action, the Plaintiff Carmine Vasile has moved for summary judgment presenting an abundance of extrinsic evidence, therefore, the Court will consider all the pending motions to dismiss as motions for summary judgment.

### II. *Standards Governing a Motion For Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56(c), courts may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of proof is on the moving party to show that there is no genuine issue of material fact, *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)), and "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judg-

ment is sought." *Id.* (citing *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, at 93–95 (1983)).

■ A party opposing a motion for summary judgment " 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.' " *Id.* at 248, 106 S.Ct. at 2510 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). Under the law of the Second Circuit, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo,* 22 F.3d at 1224 (citing *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988)). It is within this framework that the Court addresses the instant motions.

### III. *Criminal Allegations*

As an initial matter, many of Vasile's claims involve allegations of criminal activity. It is an elementary concept inherent in this nation's governmental structure and rooted in separation of powers principles that the investigation and prosecution of criminal laws is delegated to the executive branch and the appropriate law enforcement agency; agency determination depends upon the jurisdiction and the crime involved. In reviewing the numerous submissions of Carmine Vasile over the past year, it is clear that he has presented his claims to practically every federal and state law enforcement agency for review and consideration. It is not the Court's role to sit in judgment of those agencies' decisions.

■ It is also a general precept of criminal law that unless the statute specifically autho-

rizes a private right of action, none exists. *See Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988); *Cort v. Ash,* 422 U.S. 66, 79, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (no private right of action exists under criminal statutes unless there is a clear statutory basis for such an inference); *Nashville Milk Co. v. Carnation Co.,* 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958). One of the difficulties the Court faces, as is common in many *pro se* cases, is understanding the claims alleged, and associating the allegations, if possible, with viable claims. For example, Vasile accuses Defendant Dean Witter of, *inter alia,* interstate fraud, conspiracy to embezzle, obstruction of justice, mail fraud, violation of an injunction, and delaying discovery, while accusing Defendant Weiss of fraud, criminal enterprise, malicious abuse of legal process, and lying to a United States Department of Defense Investigator. The Justices are accused of breaching ministerial duties, and conspiracy to violate plaintiff's civil and property rights and malicious abuse of legal process.

Justice Underwood broke the law, Vasile maintains, by entering an Order preventing Vasile from commencing any action or proceeding in his court against Sheila Enright,[2] without prior approval of the court to ensure that the claim is made in good faith. Justice Oshrin purportedly broke the law by failing to protect Vasile from Justice Underwood's abuse of legal process, by rejecting Vasile's pleas for judicial intervention and by failing to enjoin Justice Underwood. As discussed *infra,* these judicial acts by Justices Underwood and Oshrin are actions taken pursuant to their jurisdiction and their inherent power "to manage their own proceedings . . . to control the conduct of those who appear before them . . . [and] to punish conduct which abuses the judicial process." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 33, 111 S.Ct. 2123, 2126, 115 L.Ed.2d 27 (1991). Just as I have placed limitations on Vasile's right to file additional material and bring new proceedings without obtaining prior approval of this

---

2. Sheila Enright is also interchangeably referred to as Mrs. Sheila Vasile in this Memorandum and Order and throughout other relevant documents.

Court, Justice Underwood was equally empowered.

■■ Even though the Court construes the claims in the light most favorable to Plaintiff, there is no private right of action for the vast majority of criminal allegations alleged. For example, Vasile has alleged a criminal conspiracy to deprive Plaintiff of his constitutional rights, allegedly involving all the defendants, either jointly or as between the individual defendants and other actors. The federal criminal conspiracy statute, 18 U.S.C. § 241, does not provide for a private right of action. *See Powers v. Karen*, 768 F.Supp. 46, 51 (E.D.N.Y.1991), *aff'd*, 963 F.2d 1522 (2d Cir.1992); *John's Insulation, Inc. v. Siska Construction Co., Inc.*, 774 F.Supp. 156, 163 (S.D.N.Y.1991); *United States v. Kaufman*, 750 F.Supp. 106, 108 (S.D.N.Y. 1990); *Dugar v. Coughlin*, 613 F.Supp. 849 (S.D.N.Y.1985). Nor may Vasile bring an action alleging wire or mail fraud, because the respective statutes do not create a private right of action. *See Official Publications, Inc. v. Kable News Co.*, 884 F.2d 664, 667 (2d Cir.1989); *Pappas v. Arfaras*, No. B–90–326(WWE), 1991 WL 218072, at *2 (D.Conn. Aug.27, 1991) (no legislative history or case law indicates that either 18 U.S.C. § 1341 (mail fraud) or 18 U.S.C. § 1343 (wire fraud) offers basis for private cause of action); *Raffaele v. Designers Break, Inc.*, 750 F.Supp. 611, 612–13 (S.D.N.Y.1990).

■ With respect to Defendant Weiss' alleged false statements to a Department of Defense Investigator, although a criminal prosecution might be brought under the general statute covering false statements to an agency, 18 U.S.C. § 1001, there is no private right of action under this federal criminal statute. *See Federal Savings and Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137–39 (4th Cir.1987); *United States v. Richard Dattner Architects*, 972 F.Supp. 738, 744 (S.D.N.Y. 1997); *Shah v. New York State Dep't of Civil Serv.*, No. 94 Civ 9193, 1996 WL 19021, at *7, (S.D.N.Y. Jan.17, 1996); *Williams v. McCausland*, 791 F.Supp. 992, 1001 (S.D.N.Y.1992). Nor has plaintiff cited any authority which would support implying a private right of action for violation of these alleged crimes. If the allegations are purported to raise a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, Congress specifically provided for a private right of action. *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court").

Accordingly, as the criminal claims raised, save the RICO allegations, do not provide for a private right of action, Vasile cannot seek civil redress for these allegations. However, as discussed *infra*, Vasile's allegations do not meet the minimal requisites of RICO.

## IV. *Defendant Dean Witter*

Defendant Dean Witter moves to dismiss this action on numerous independent grounds. The gravamen of Vasile's claim against Dean Witter stems from an alleged series of transfers in or about May 1990, of approximately $176,000 in commingled matrimonial and Uniform Gift for Minors Act ["UGMA"] assets, held in Dean Witter accounts, specifically account number 201–013884, and that the UGMA assets were illegally transferred into margin accounts, in contravention of a court ordered injunction. In response, Dean Witter asserts that: (1) the injunction had been dissolved prior to the challenged account activity; (2) the injunction had no legal application to Dean Witter; (3) the accounts in question were registered to Sheila Enright and Robyn Enright, and therefore Dean Witter owed Carmine Vasile no fiduciary duty; (4) Vasile has failed to allege fraud; (5) Vasile has failed to allege a RICO claim; (6) Dean Witter is exempt from liability under UGMA; (7) Dean Witter cannot be held vicariously liable; and (8) Vasile's claims are time barred.

Although each of the grounds raised for dismissal may constitute a separate and independent basis to dismiss Plaintiff's suit, the Court need not determine the propriety of each proffered ground. Because of Vasile's undeterred persistence, however, an attempt will be made to analyze each enumerated defense.

As an initial matter, Dean Witter claims that the injunction was not in force at the time the transfer was made. The accounts held by Dean Witter included separate accounts in the name of Carmine Vasile, Sheila Vasile, and Sheila Vasile CDN (custodian) for Robyn Enright CA/UGMA.

A review of the activity during May, 1990, in account number 201–013884, held in the name of Mrs Sheila Vasile at a California Dean Witter branch, which eventually was transferred on May 21 to a Dean Witter branch in Melville, Long Island, where it was assigned account number 539–045735, based upon the records Plaintiff submitted, include the following: (1) On April 30, the account had a negative cash balance of $2998.20, (2) on May 15, $57,015.44 was transferred to an account at Manufacturer's Hanover; (3) on May 16, a check written on the account cleared and was covered by a check deposited the day before, also in the amount of $60,000.00; (4) on May 21, a negative cash balance of $59,295.64 was transferred to the Melville branch, along with the securities portfolio; (5) sufficient securities were sold from the account to cover the shortfall; and (6) as of May 31, 1990, the Dean Witter account had a positive cash balance of $1967.14.

In account number 201–019096, Sheila Vasile for Robyn Enright, which became account number 539–046171 as of August 13, 1990, when it was transferred to the Melville office, the account statements provided by the Plaintiff reveal a total account valuation of $4727.72 as of March 31, 1990, $4727.20 as of May 30, 1990, and $3556.68 as of August 31, 1990. The reduction in account valuation was related solely to a decrease in the value of the portfolio, as there was no activity in the account. Although Vasile alleges that $176,567.14 was removed from marital assets, the records do not support such contention. Only the May 15, 1990 transfer of $57,015.44 to an account at Manufacturer's Hanover represents assets removed from the account. The $60,000.00 appears to be a pass-through transaction where monies entered and left the account in conjunction, with no net effect. And, as indicated, there was no activity in the

Robyn Enright account during the period reviewed.

### 1. *The Injunction*

The Honorable Saverio J. Fierro, Suffolk County Supreme Court, presiding over an order to show cause and cross motions in the underlying divorce action, by Order, dated April 17, 1989, held, in relevant part:

> Defendant [Carmine Vasile] is directed to pay all of the carrying charges on the marital residence, including, but not limited to, mortgage principal and interest for both the first and second mortgages, real estate taxes, water, utilities and fuel, but not telephone service, cable television, or lawn or horticultural care.
>
> Both parties are restrained and enjoined from selling, transferring, hypothecating or otherwise disposing of or encumbering any marital asset or any interest therein, including, but not limited to, the Dean Witter account no. 174534–08, Washington Public Power System Supply Systems bonds and shares of Instrument Systems maintained in Dean Witter accounts, except in the ordinary course of business or personal affairs and for full value. *Leibowits v. Leibowits*, 93 A.D.2d 535, 462 N.Y.S.2d 469 (2d Dep't 1983).

Mr. Vasile has provided a letter indicating that he notified Dean Witter of the court order restricting account activity. However, as the account activity in question, specifically the May 15, 1990 transfer to Manufacturer's Hanover, arose *after* the May 9, 1990 Order, Index # 12305/88, entered by the same Honorable Saverio J. Fierro, Suffolk County Supreme Court, lifting the injunction, the transfer was lawful. Sheila Enright was no longer restrained from engaging in activity in her Dean Witter account. Specifically, the May 9, 1990 Order provides, in relevant part:

> The parties and their respective attorneys having appeared before me on May 8, 1990, and having entered into a stipulation of settlement in open court, and the parties having agreed, inter alia, . . . and the parties having further agreed that the restraining order issued by this court on April 17, 1989 which restrained and en-

joined the parties from selling, transferring, hypothecating or otherwise disposing of or encumbering any marital asset or any interest therein, including but not limited to, the Dean Witter accounts be **terminated and of no further force and effect;** and the court having had due deliberation thereon

Now, on motion of Philip F. Alba, P.C., attorney for the defendant, it is . . .

ORDERED that the restraining order issued by this court on April 17, 1989 restraining and enjoining the parties from selling, transferring, hypothecating or otherwise disposing of or encumbering any marital asset or any interest therein, including but not limited to, the Dean Witter accounts held in the name of Sheila Vasile, Robyn Alise Enright and Carmine Vasile, be and the same is **hereby terminated and of no further force and effect.** [Emphasis added].

Therefore, it is clear that the Court which entered the injunction in the first instance, removed the injunction by Order dated May 9, 1990, pursuant to the stipulation of settlement of the parties, occurring in open court, and entered on the motion of Mr. Vasile's attorney. Accordingly, Vasile's claim against Dean Witter for transferring funds in derogation of the injunction is not factually accurate.

■ As a separate basis for dismissal of the claims, Dean Witter asserts that the injunction at issue had no legal effect against Dean Witter because it was only addressed to the parties in the action. Moreover, Dean Witter asserts that the injunction was technically a "property restraint" issued pursuant to New York Domestic Relations Law ("DRL") § 234, and not a "preliminary injunction" issued pursuant to CPLR Article 63.

This is a correct statement of law. Justice Fierro's Order of April 17, 1989, cited to *Leibowits v. Leibowits,* 93 A.D.2d 535, 462 N.Y.S.2d 469 (2d Dep't 1983) as controlling authority for imposing the restraint on the parties. In *Leibowits,* the court established in its opening paragraph that "Section 234 of the Domestic Relations Law provides the authority for the issuance of an order restraining disposition of marital assets during the pendency of a divorce action. Therefore, compliance with the formalities and jurisprudential requirements of article 63 of the CPLR relative to preliminary injunctions is not a prerequisite to an order of restraint." *Id.* Because a preliminary injunction would require a showing of probability of success on the merits, irreparable injury, and a favorable balancing of the equities, and would require the movant spouse to post an undertaking, the court went on to describe Section 234's power of restraint as "vital to meaningful enforcement of the equitable distribution statute." *Id.* at 536, 462 N.Y.S.2d at 471. In his concurring opinion, Justice O'Connor thoroughly explicates the legislative history of Section 234 and its scope and powers, and describes the interplay with third parties thusly:

> Accordingly, since section 234 is limited in its reach to the rights of the spouses as between themselves, a spouse seeking to preclude dissipation of marital property in which a third party has an interest that would be prejudiced by a change of possession must be relegated to the court's inherent power to issue preliminary injunctions as regulated by article 63 of the CPLR.

*Id.* at 557, 462 N.Y.S.2d at 482. Although Dean Witter is not a third party in interest, the breadth of Section 234 is clearly delimited to the immediate parties to the Order. This is buttressed by the McKinney's Practice Commentaries to DRL § 234, C:234:5 at 98, (McKinney's (1986)), which provides, "[w]here a restraint is sought to be made effective as against third persons, DRL 234 has no role and remedies must be sought elsewhere, as in CPLR Article 63 on injunctions. . . . Accordingly, where a matrimonial litigant seeks to restrain an asset transfer to third parties, or to direct those third parties to place the consideration for the asset transfer in escrow, the appropriate procedure, to obtain relief against the third parties is by resort to an application for a preliminary injunction." As referenced by Dean Witter, and directly on point is *Bell v. Roosevelt Savings Bank,* 160 Misc.2d 728, 611 N.Y.S.2d 87 (N.Y.Sup.1994), which framed the issue before the court as "how a financial institu-

tion should act when it is served with an order restraining an **individual** from withdrawing funds from an account but the order is silent as to a restraint on the financial institution itself." (emphasis in original). The court concluded that the result is straight-forward, "[t]he individual, who is before the court, is restrained from removing funds while the financial institution, which is not before the court, is not called upon to do anything other than honor its institutional rules concerning access to accounts," even when notified of the restraint order. *Id.* at 729, 611 N.Y.S.2d at 88. By honoring its own rules pertaining to withdrawals and account activity, Dean Witter duly carried out its institutional responsibility, and accordingly is not liable to the plaintiff.

2. *Fiduciary Duty*

▮▮▮ Dean Witter next avers that it owes Vasile no duty, fiduciary or otherwise, with respect to the two accounts at issue, registered in the names of Mrs. Sheila Vasile and Robyn Enright. As a general matter, under New York law, a fiduciary relationship exists "when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Flickinger v. Harold C. Brown & Co. Inc.,* 947 F.2d 595, 599 (2d Cir.1991) (citations omitted). A relationship between a stock broker and his customer may rise to this level, but not necessarily so. *See Bissell v. Merrill Lynch & Co.,* 937 F.Supp. 237, 246 (S.D.N.Y.1996) ("the mere existence of a broker-customer relationship is not proof of its fiduciary character."). Rather, it is only in those instances in which the broker exercises trading discretion over the account, as delegated by the customer, that the relationship establishes a fiduciary duty. *Id.* In the instant action, there is nothing in the record indicating that Dean Witter had trading discretion over the account, and of greater consequence, neither account was in the name of Carmine Vasile. Mr. Vasile had no interest in either account, save at most an expectancy interest contingent upon a favorable equitable distribution of the marital assets. This is supported by Mr. Vasile's letter of October 7, 1989, in which he notified Dean Witter's Vice–President of Investments, Mr. D. War-

ner Johnson, of Justice Fierro's court order. In the letter Vasile states "[y]ou of all people know how careful I was over the years to keep our accounts separate." As the Vasiles kept completely separate accounts, Carmine Vasile has no legal interest in the two accounts in question and cannot establish the existence of Dean Witter's purported fiduciary duty.

3. *Conspiracy and Fraud Allegations*

▮▮▮ Dean Witter asserts in defense that Vasile has not satisfied the requisite elements of fraud and that New York does not recognize a conspiracy cause of action. As an initial matter, Rule 9(b) of the Federal Rules of Civil Procedure requires that the circumstances constituting fraud be stated with particularity.

▮▮▮ As mentioned *supra,* there is no private right of action for criminal conspiracy. If the conspiracy allegations are construed as alleging civil conspiracy, New York law does not recognize a tort action for civil conspiracy. *See Wall St. Transcript Corp. v. Ziff Communications Co.,* 225 A.D.2d 322, 638 N.Y.S.2d 640, 641 (1st Dep't 1996); *see also Durante Bros. and Sons, Inc. v. Flushing Nat'l Bank,* 755 F.2d 239, 251 (2d Cir.), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985); *Greystone Partnerships Group, Inc. v. Koninklijke Luchtvaart Maatschappij N.V.,* 815 F.Supp. 745, 759 (S.D.N.Y.1993). However, while New York does not recognize conspiracy as an independent cause of action in tort, a cause of action for conspiracy to do something unlawful is valid to the extent that the underlying conduct alleged states a cause of action. *Local 144, Hotel, Hosp. v. C.N.H. Mgt. Assocs.,* 741 F.Supp. 415, 421 (S.D.N.Y.1990). To the extent the Plaintiff's claims can be read to allege conspiracy to commit fraud, under New York law, "civil conspiracy to commit fraud, standing alone, is not actionable ... if the underlying independent tort has not been adequately pleaded ..." *Epstein v. Haas Sec. Corp.,* 731 F.Supp. 1166, 1187 (S.D.N.Y. 1990) (citing *Demalco Ltd. v. Feltner,* 588 F.Supp. 1277, 1278 (S.D.N.Y.1984)), though "a claim of conspiracy can rest upon an independent underlying claim of fraud." *Boucher*

*v. Sears,* No. 89–CV–1353, 1997 WL 736532, at *12 (N.D.N.Y. Nov.21, 1997)(internal quotations omitted).

Under New York law, a plaintiff must establish five elements by clear and convincing evidence to prevail on a claim of fraud: (1) a material misrepresentation or omission of fact; (2) made with knowledge of its falsity, (3) with an intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) such reliance causes damage to the plaintiff. *Schlaifer Nance & Co. v. Estate of Andy Warhol,* 119 F.3d 91, 98 (2d Cir.1997) (citations omitted). Once fraud is established, the conspiracy must be proven, requiring "(i) an agreement between the conspirator and the wrongdoer and (ii) a wrongful act committed in furtherance of the conspiracy." *Richardson v. Artrageous, Inc.,* No. 93 Civ. 5221(RPP), 1994 WL 97222 at *3 (S.D.N.Y., March 18, 1994).

As Dean Witter correctly asserts, Vasile does not allege a material misrepresentation. Vasile's contention lies on the premise that Dean Witter wrongly allowed Sheila Enright to transact business in her account and in her daughter's account in derogation of a court order. As discussed above, Dean Witter did not violate the court order and Carmine Vasile was neither a signatory to, nor had a legal interest in, the two accounts in question. Moreover, although Vasile purportedly notified Dean Witter of the restraining order, there is no allegation that they responded or made representations of an intent to comply. They had no duty to comply, and they owed Vasile nothing with respect to these accounts. Finally, there was no omission of facts. Dean Witter was not required, and may not have been at liberty to provide copies of account statements upon request, absent a subpoena or discovery procedures arising from the matrimonial or other state court proceedings. Accordingly, as Vasile has failed to plead the initial element of fraud, a material misrepresentation or omission of fact, and the facts as alleged do not support such a showing, the claim of fraud is hereby dismissed. Having failed to make a prima facie showing of fraud, Vasile's conspiracy claim must also be summarily dismissed.

### 4. *Liability under RICO*

Vasile also raises allegations of a RICO violation in his complaint and supporting documents, suggesting that Dean Witter's brokers engaged in a criminal enterprise, money laundering, racketeering, mail fraud, and embezzlement and other crimes. As discussed *supra,* there is no private right of action for the alleged crimes, however, a civil RICO claim can arise from criminal behavior.

The Supreme Court has explained that "RICO renders criminally and civilly liable 'any person' who uses or invests income derived 'from a pattern of racketeering activity' to acquire an interest in or to operate an enterprise engaged in interstate commerce, [18 U.S.C.] § 1962(a); who acquires or maintains an interest in or control of such an enterprise 'through a pattern of racketeering activity,' [18 U.S.C.] § 1962(b); who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs 'through a pattern of racketeering activity,' [18 U.S.C.] § 1962(c); or, finally, who conspires to violate the first three subsections of [18 U.S.C.] § 1962, § 1962(d)." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 232–33, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989); *see Azrielli v. Cohen Law Offices,* 21 F.3d 512, 520 (2d Cir.1994). Additionally, "RICO provides for drastic remedies: conviction for a violation of RICO carries severe criminal penalties and forfeiture of illegal proceeds, 18 U.S.C. § 1963 ... and a person found in a private civil action to have violated RICO is liable for treble damages, costs, and attorney's fees, 18 U.S.C. § 1964(c)." *H.J. Inc.,* 492 U.S. at 233, 109 S.Ct. at 2897.

To state a claim for RICO damages, a plaintiff has two pleading burdens. First, a plaintiff has to allege the existence of seven constituent elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied* 465

U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *see Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496–497, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *United States v. Private Sanitation Indus. Ass'n,* 793 F.Supp. 1114, 1125–26 (E.D.N.Y.1992). Second, a plaintiff has to allege that he was "injured in his business or property by reason of a violation of section 1962." *Moss v. Stanley, Inc.,* 719 F.2d at 17; *see Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. at 496–497, 105 S.Ct. at 3285 (proclaiming that a plaintiff must prove that "he has been injured in his business or property by the conduct constituting the violation").

In the instant action, Dean Witter contends that the Plaintiff has failed to satisfy his burden regarding any of the elements of a RICO claim, and specifically addresses the failure to allege a pattern of racketeering activity consisting of the commission of at least two predicate acts. The Court will address each of these arguments.

■ To constitute a pattern, the RICO predicate acts (1) must be related, and (2) reveal (a) continued, or (b) the threat of continued, unlawful conduct. *See Azrielli,* 21 F.3d at 520. As the Supreme Court has explained:

A pattern is not formed by sporadic activity, . . . and a person cannot be subjected to the sanctions of [RICO] simply for committing two widely separated and isolated criminal offenses . . . . Instead, the term "pattern" itself requires the showing of a relationship between the predicates, . . . and of the threat of continuing activity . . . . It is this factor of *continuity plus relationship* which combines to produce a pattern.

*H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. at 2900 (emphasis in original)(internal quotes omitted); *Azrielli,* 21 F.3d at 520 (quoting *H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. at 2900).

■ Similarly, the Second Circuit has explained that "[t]he purpose of the relationship and continuity requirements is to 'prevent the application of RICO to the perpetrators of "isolated" or "sporadic" criminal acts.'" *Azrielli,* 21 F.3d at 520 (quoting *United States v. Indelicato,* 865

F.2d 1370, 1383 (2d Cir.)(en banc), *cert. denied,* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989)). Multiple schemes, however, are not required for a pattern to be found, and further, there is no requirement that the predicate acts be discernable as separable episodes or transactions. *See Com–Tech Assocs. v. Computer Assocs. Int'l* 753 F.Supp. 1078, 1091 (E.D.N.Y.1990), *aff'd,* 938 F.2d 1574 (2d Cir.1991).

■ Predicate acts are "related" for RICO purposes when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Schlaifer Nance & Co.,* 119 F.3d at 97 (quoting *H.J. Inc.,* 492 U.S. at 240, 109 S.Ct. at 2901). The Second Circuit has noted that

[a]n interrelationship between acts, suggesting the existence of a pattern, may be established in a number of ways. These include proof of their temporal proximity, or common goals, or similarity of methods, or repetitions. The degree to which these ·factors establish a pattern may depend ·on the degree of proximity, or any similarities in goals or methodology, or the number of repetitions.

*Azrielli,* 21 F.3d at 520 (quoting *Indelicato,* 865 F.2d at 1382). Further, for the relatedness element to be satisfied, the predicate acts must be related, directly or indirectly, to each other as well as to the enterprise. *See United States v. Locascio,* 6 F.3d 924, 943 (2d Cir.1993), *cert. denied,* 511 U.S. 1070, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994) (proclaiming that relatedness requirement is satisfied even if the predicate acts are not directly related to each other so long as both are related to the RICO enterprise in such a way that they become indirectly connected to each other); *United States v. Long,* 917 F.2d 691, 697 (2d Cir.1990).

■ Continuity—the second element that must be shown for a pattern of racketeering activity to be established—requires allegations of "either an 'open-ended' pattern of racketeering activity, (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a 'closed-ended' pattern· of racketeering activity (i.e., past criminal con-

duct 'extending over a substantial period of time')." *Schlaifer Nance & Co.*, 119 F.3d at 97 (quoting *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 466, (2d Cir.1995)), *cert. denied*, 518 U.S. 1017, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996). The Second Circuit went on to describe how to determine whether a threat of "open-ended" continuity exists. *Id.* "[A] court must examine the nature of either: (1) the predicate acts alleged, or (2) the enterprise at whose behest the predicate acts were performed." *Id.* (citations omitted). For "close-ended" continuity, activity continuing for a matter of years is sufficient to satisfy "a substantial period of time." *Id.* (citing *Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir.1989)).

Applying these standards to the case at bar, Vasile's claims amount to the following: (1) Dean Witter had knowledge of the injunction restraining transfer of the account assets; (2) Dean Witter's failure to comply with the restraining order prevented Vasile's assets from being protected from embezzlement; (3) Dean Witter's brokers conspired with Sheila Enright to embezzle funds belonging to Vasile and Robyn Enright, and in so doing engaged in mail fraud and wire fraud.

■■■ As previously discussed, Dean Witter had no legal obligation to comply with the April 17, 1989 property restraint issued pursuant to DRL § 234. Mr. Vasile's attorney had the opportunity to make application for a preliminary injunction enjoining Dean Witter from transacting any activity in the accounts in question. Further, because there is no evidence that the transactions were unauthorized, all claims of wire fraud and/or mail fraud must fail. "[T]he essential elements of a mail [or wire] fraud violation are (1) a scheme to defraud, (2) money or property [as the object of the scheme], and (3) use of the mails [or wires] to further the scheme." *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir.1996)(internal quotations omitted); 18 U.S.C. §§ 1341, 1343. In addition, there has been no showing of a scheme to defraud, or any conspiracy entered into by Dean Witter's brokers in conjunction with Sheila Enright. This would require a showing that the brokers and Enright entered into an agreement and committed a wrongful act in furtherance of the agreement. All Vasile can point to is that the brokers executed transactions on behalf of Sheila Enright and transferred her account from a California branch to a New York branch. In executing the transactions they were acting pursuant to instructions of the account holder. Repeatedly calling people embezzlers, conspirators or criminals, does not make it so. Embezzlement is the fraudulent appropriation of money by a person to whom such money had been entrusted or into whose hands it has lawfully come and that the person misappropriated the funds for his own purpose and that he did so with wrongful intent or deceit. There has been no allegation that Dean Witter benefitted by the transactions, or any showing of the specific criminal intent required. Because Vasile can prove no criminal activity was committed by Dean Witter, or establish the existence of a predicate act as set forth in 18 U.S.C. Section 1961(a), the RICO claim must fail.

■■■ The specific acts in question, based upon Vasile's contentions, occurred within the span of a few months in 1990. The acts did not constitute a RICO pattern and although they were related to the extent that they were transactions involving Enright's accounts, they had no continuity as they did not extend over a substantial period of time, nor pose a threat of future criminal conduct. After construing the evidence in the light most favorable to the Plaintiff, the Court concludes that Vasile has failed to establish a single predicate act or the existence of a pattern of racketeering activity. Accordingly, the Court finds that a reasonable juror could not find a "pattern" of racketeering activity, and thus summary judgment is warranted on this ground.

### 5. *UGMA Exemption*

As an additional and separate basis to dismiss Vasile's complaint, Dean Witter raises the statutory exemption absolving brokers and financial institutions from liability for acting on instructions from the custodian. The Uniform Gifts to Minors Act governs transfers made before the end of 1996. Custodial transfers made thereafter are gov-

erned by the Uniform Transfers to Minors Act. EPTL 7–6.1 *et seq.* The statutory exemption raised by Dean Witter is Section 7–4.6 of the Estates, Powers and Trust Law ("EPTL"), entitled "Exemption of third persons from liability."[3] Although courts have held that "[t]he policy of this section protects a broker in the broker's reliance on instructions received from a custodian," *Feinberg v. Bache Halsey Stuart Inc.*, 61 A.D.2d 135, 402 N.Y.S.2d 187, 189 (1st Dep't 1978), the wisdom of the Second Circuit informs a cautionary reluctance, in part because the "meaning of section 7–4.6 is far from clear because that provision has rarely been interpreted by New York courts. Were a federal court deciding whether to assert pendent jurisdiction over a claim requiring interpretation of such a statute, its obscurity and the paucity of pertinent state judicial precedent would argue in favor of deferring in favor of the state courts." *Scott v. Long Island Sav. Bank,* 937 F.2d 738, 742 (2d Cir.1991). Accordingly, and because it is unnecessary to decide, the Court will not determine whether EPTL § 7–4.6 absolves Dean Witter of liability in the instant matter.

### 6. *Statute of Limitations*

Lastly, as a separate and independent basis to dismiss this action, Dean Witter asserts that Vasile's claims are time-barred. A four-year statute of limitations applies to civil RICO actions. *See Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 152, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). A cause of action accrues under RICO at the time that the plaintiff "discovered or should have discovered the injury." *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1102 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). The New York statute of limitations for fraud is six years from the date of commission, *see* CPLR 213(8) (McKinney 1990), or two years from the date the plaintiff discovered, or should have discovered, the fraud, whichever is longer. CPLR 203(f), 213(8); *see also Long Island Lighting Co. v. Imo Indus. Inc.*, 6 F.3d 876, 887 (2d Cir. 1993). A claim for breach of fiduciary duty is governed by the underlying concomitant claim, thus, where it is a claim for an action to recover damages for any "injury to property," pursuant to CPLR § 214(4), a three year statute of limitations applies. Under New York law, a six year limitations applies to a claim for breach of fiduciary duty only where the alleged breach "had its genesis in the contractual relationship of the parties." *Sears Roebuck & Co. v. Enco Assocs. Inc.*, 43 N.Y.2d 389, 396, 401 N.Y.S.2d 767, 771, 372 N.E.2d 555 (1977). The statute of limitations can be specified in the statute. For example, under ERISA, inapplicable to the case at bar, "a breach of fiduciary duty involving fraud or concealment, the three-year exception for actual knowledge does not apply, and a party has six years from the time it discovers the breach to bring an action. For all other breaches of fiduciary duty, a party can commence an action within six years of the time the breach occurred, unless the party has actual knowledge of the breach, in which

---

**3.** EPTL § 7–4.6 provides:
Exemption of third persons from liability,
No issuer, transfer agent, bank, life insurance company, broker or other person or financial institution acting on the instructions of or otherwise dealing with any person purporting to act as a donor or in the capacity of a custodian is responsible for determining whether the person designated as custodian by the purported donor or by the custodian or purporting to act as a custodian has been duly designated or whether any purchase, sale or transfer to or by or any other act of any person purporting to act in the capacity of custodian is in accordance with or authorized by this part, or is obliged to inquire into the validity or propriety under this part of any instrument or instructions executed or given by a person purporting to act as a donor or in the capacity of a custodian, or is bound to see to

the application by any person purporting to act in the capacity of a custodian of any money or other property paid or delivered to him. No issuer, transfer agent, bank, life insurance company, broker or other person or financial institution acting on any instrument of designation of a successor custodian, executed as provided in paragraph (a) of 7–4.7 by a minor to whom a gift has been made in the manner prescribed by this part and who has attained the age of fourteen years, is responsible for determining whether the person designated by the minor as successor custodian has been duly designated, or is obliged to inquire into the validity or propriety under this part of the instrument of designation.
(Formerly § 7–4.5, L.1966, c. 952, amended L.1967, c. 686, § 66; renumbered and amended L.1981, c. 43, §§ 1, 7.)

case it must bring the action within three years of the time it learned of the breach." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 919 (2d Cir.1989). When negligence is the basis upon which the breach is alleged, a three year statute of limitations applies. *See Aaron Ferer & Sons Ltd., v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 120 (2d Cir.1984).

■ Here, the actions which Vasile maintains provides the basis for his claims, arose in the summer of 1990. Plaintiff initiated this suit on December 9, 1997, more than seven years later. Vasile contends that he first became aware of the true character and scope of the conspiracy, and therefore the RICO claim, on September 18, 1997, based upon documents provided by NYSE counsel, Regina Dunne, which included the Dean Witter account statements.

This claim is discredited by the testimony at a hearing before the Honorable Alan Oshrin, dated September 9, 1992, in which Vasile, represented by Anthony N. Del Rosso, Esq., brought an order to show cause based on newly discovered evidence that Sheila Enright committed fraud and was guilty of misrepresentation. The following exchange took place:

Del Rosso: We found out about the fraud, I did, on August 13, 1992. My client was informed on August 17th, five days after I

Court: But that was fraud that you could have ascertained prior to the

Del Rosso: Who said so, Judge?

Court: You claim in your papers that there was non-compliance by Mrs Vasile or Mrs. Enright with respect to a prior Order of Justice Fierro.

(Ex. D at 5.)

Then later on, the following discussion occurred:

Court: Was your client represented by a lawyer?

Del Rosso: I believe he was.

Court: Okay. Did discovery take place?

Del Rosso: As far as I know. I am not sure of that fact...

 . . .

Court: And your client relied—this is a matrimonial that went on for some two years, which was certainly acrimoni-

ous at best and he didn't engage in discovery. He had counsel.

(Ex. D at 14–15, 17.)

The Court then attempts to determine what would have happened to the stock if, as alleged, Sheila Enright sold shares in violation of the injunction.

Court: Look at the Stipulation of Settlement, perhaps, sir, at—there it is, Page 12. "It is stipulated by and between Counsel and the respective parties hereto that this Court will immediately cause to be vacated and dissolved its injunction that heretofore were issued ... and the purpose and the necessity of the vacation of these two injunctions is an Order to secure funds from those accounts to satisfy the arrears concerning the mortgages due on the marital premises."

(Ex. D at 20.)

After further questioning, the following dialogue occurred:

Court: So it was her money used to satisfy a mortgage?

Del Rosso: Well, that is part of the Stipulation of Settlement, Judge.

Court: How was your client damaged if it was to be his stock that it (sic) was to be used to satisfy the mortgage?

Del Rosso: He was supposed to get the stock.

Court: And satisfy the mortgage from that stock, that is what it says.

(Ex. D at 22.)

Further on, Vasile's attorney summarizes his position:

Del Rosso: But I say there is fraud here and there is nothing in the stipulation [of settlement] that said it is divisible, therefore, the whole agreement must be vitiated by fraud.

Court: How did Mr. Vasile find out about the Dean Witter account?

Del Rosso: By me, okay.

Court: Mr. Vasile had a lawyer at that time?

Del Rosso: I can't explain why the lawyer—you are speculating your Honor.

Court: I am wondering why you didn't serve a subpoena on Dean Witter.

Del Rosso: You want to know something, it was told—Dean Witter told them that they could not get the information on her account because Norman Weiss communicated with them and so instructed them.

Clearly amused by this explanation, the Court replies:

Court: Mr. Weiss is more powerful than the Supreme Court of Suffolk County, okay.

(Ex. D at 35–36.)

Finally, Vasile's attorney moves the Court to reconsider its ruling which denied continuance of a temporary restraining order, signed by Judge Gerard, protecting the prior marital assets in her possession. The Court ruled as follows:

Court: Mr. Del Rosso, in view of the fact that I have some difficulty with your client's position based on the Doctrine of Ratification as enunciated by the Court of Appeals in Beuetel and the Appellate division in the recent case of Krusik against Krusik and a whole bunch of other cases and you tell me that you obtained this information, recently, yourself, **which leaves (sic) me to the inescapable conclusion this information was obtainable by Mr. Vasile prior to today**.... Having read the papers, having listened to you orally argued (sic), having listened to Mrs. Phillips, at this juncture I do not believe that on balance a restraint of this broad nature is appropriate. Remember, sir, it is over two years since the Judgment of Divorce has passed. We said enough. I have made my ruling. [emphasis added]

(Ex. D at 54–55.)

It is patently obvious to this Court that the numerous submissions of Carmine Vasile, always stylized as "New Evidence," should more accurately be denominated "New Opportunity to Present Old Evidence" because, as the aforementioned exchange makes clear, Vasile has been attempting to re-hash issues previously decided. It is true that Vasile was attempting to argue fraud with respect to the stock transactions on the part of Sheila Enright, a named party to the restraining order, a position with greater legal merit than the instant action, however, whether the order was lawfully in effect at the time of Enright's transactions is not critical in deciding Dean Witter's legal obligation. Although Vasile was not alleging fraud on the part of Dean Witter at the September 9, 1992 hearing, nothing has changed and no new evidence has emerged to suggest that Dean Witter's involvement was anything more than processing the transactions. Vasile became aware, at the absolute latest, on or about August 17, 1992, that Enright possibly sold

stock in derogation of the restraining order. At that moment, Vasile was aware that he had previously notified Dean Witter of the restraining order and he was aware that Dean Witter allowed Sheila Enright to sell shares. His claims today, accusing Dean Witter of conspiring with Sheila Enright to embezzle funds from the accounts, offers no more factual support than that which he was aware of then. It is true that he may not have known of the specific transactions which occurred in May 1990, however, Dean Witter's involvement has remained constant, it followed the directions of Sheila Enright, the account holder. Moreover, Justice Oshrin decided on September 9, 1992 that the account information was previously and readily available via subpoena. It is therefore this Court's conclusion that through the exercise of reasonable diligence, Vasile, and/or his prior attorney, could have discovered the Dean Witter transactions occurring in or about May 1990, which form the basis for Vasile's claims in the instant action. Accordingly, Vasile's RICO claims are time-barred under the applicable statute of limitations. Moreover, his claims for fraud and for breach of fiduciary duty, even when granted the most liberal date of discovery, are violative of the applicable statutes of limitation. Accordingly, because Plaintiff's claims against Dean Witter are time-barred, they must be dismissed.

Vasile's motion in opposition to Dean Witter's motion to dismiss, does not refute, and as determined above cannot refute, any of the legal grounds upon which this action must be dismissed. Rather, he alleges that Justice Fierro's Order of May 9, 1990 was invalid and contained a forged signature of his counsel, because, it contains a "Yellontail." Although Vasile has consistently attempted to blame every adverse ruling and all his legal woes on Norman Yellon's notary certification, or lack thereof, such issues are immaterial and irrelevant to the matter before the Court. Indeed, the Court will not entertain, nor dignify, Vasile's inane rants concerning the "Yellon–Gang Conspiracy," of which, it now appears, I am the advocate, protector, accused ringleader and the "Federal–Judge–of–Choice." As aptly indicated

by Dean Witter, whether the "proper" May 9, 1990 Order of Judge Fierro is the copy provided by Dean Witter or the copy provided by Vasile is of no moment, either document repeats the critical language removing the restraining order and releasing the parties from its effect. Moreover, the fact that the decision was rendered upon an order does not preclude it from having the same effect as a judgment. "The modern rule is that an order made upon a motion has the same effect as a judgment, and that although technical and historical distinctions might be drawn between final orders and final judgments, the doctrine of res judicata applies to both." *Thaler v. Casella*, 960 F.Supp. 691, 698 (S.D.N.Y.1997) (quoting 73 N.Y.Jur.2d "Judgments" § 354 (1996)); *see also Litz Enterprises, Inc. v. Standard Steel Indus., Inc.*, 57 A.D.2d 34, 394 N.Y.S.2d 765, 768–69 (4th Dep't 1977) (a party will not be denied the benefits of res judicata where a final order on the merits has not been reduced to a formal judgment). All other unaddressed claims raised by Vasile have been reviewed and are without merit and are accordingly dismissed.

In conclusion, and for all the aforementioned reasons, Defendant Dean Witter's motion to dismiss all the claims against it is granted in its entirety and Vasile's suit against Dean Witter is dismissed with prejudice.

### V. *Honorable Alan D. Oshrin and Honorable William L. Underwood*

Justices Oshrin and Underwood move to dismiss this action in its entirety on numerous independent grounds, including: (1) the doctrine of res judicata; (2) the Eleventh Amendment; (3) the *Rooker–Feldman* doctrine; (4) the doctrine of absolute judicial immunity; (5) the doctrine of qualified immunity; (6) the action is time-barred under the applicable statute of limitations; and (7) Plaintiff fails to state a claim upon which relief can be granted. In addition, Plaintiff's summary judgment motion is attacked as procedurally barred for being commenced within 20 days of initiating suit.

Vasile's suit alleges, among numerous other claims, that Justice Underwood's Order, dated October 6, 1997, in which he enjoined Vasile from commencing any action or proceeding against Sheila Enright, without prior court approval, was an unconstitutional, invalid, ex-parte Order representing an ongoing violation of Vasile's civil rights and was in furtherance of an interstate fraud and conspiracy commenced in 1990. Vasile alleges that Justice Oshrin was advised of numerous crimes against Vasile's person and was advised that Justice Underwood broke the law while breaching his ministerial duty by violating Vasile's civil rights, and by failing to act in a judicial capacity to protect Vasile against Justice Underwood's malicious abuse of legal process in the clear absence of jurisdiction, and by rejecting Vasile's pleas for judicial intervention, and by failing to remove Justice Underwood and by denying Vasile's attempt to amend his pleadings, Justice Oshrin broke the law and breached his ministerial duty. In addition, Vasile alleges a nefarious conspiracy between Justices Underwood, Oshrin and Defendant Weiss.

Although the Justices raise numerous grounds for dismissal, the Court will touch upon three legal theories which mandate dismissal.

### I. *Absolute Judicial Immunity:*

■ As an initial barrier to suit, encompassing all the allegations raised against Justices Oshrin and Underwood, is the defense of absolute judicial immunity.

■ It is a well settled rule that a judge is absolutely immune from suit for any actions taken within the scope of his judicial responsibilities. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Butz v. Economou*, 438 U.S., 478, 511–13, 98 S.Ct. 2894, 2913–14, 57 L.Ed.2d 895 (1978); *Stump v. Sparkman*, 435 U.S. 349, 355–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978); *Maestri v. Jutkofsky*, 860 F.2d 50, 52–53 (2d Cir.1988), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1132, 103 L.Ed.2d 193 (1989). A long established doctrine, judicial immunity is necessary because "principled and fearless decision-making" will be compromised if a judge "fear[s] that unsatisfied litigants may hound him with litigation

charging malice or corruption." *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). More than one hundred years ago the Supreme Court noted, "[l]iability to answer to everyone who might feel himself aggrieved by the action of the judge ... would destroy that independence without which no judiciary can be either respectable or useful." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871).

Absolute judicial immunity applies to all judges and other persons engaged in a judicial function, that is the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights," *Burns v. Reed*, 500 U.S. 478, 498–502, 111 S.Ct. 1934, 1946–47, 114 L.Ed.2d 547 (1991), and provides absolute immunity from damage suits for their judicial acts, unless such acts are done in the clear absence of all jurisdiction. The Supreme Court has emphasized that jurisdiction over the subject matter is the key element conferring immunity in a particular circumstance, and the inquiry is whether a defendant judge had jurisdiction over the subject matter before him when he took the challenged action. However, because "some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction," *Stump*, 435 U.S. at 356–57, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (quoting *Bradley*, 80 U.S. at 351, 13 Wall. 335), the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* An additional limitation is that a judge is immune only for actions performed in his judicial capacity. 435 U.S. at 360–63, 98 S.Ct. at 1106–08; *see also Maestri v. Jutkofsky*, 860 F.2d 50, 53 (2d Cir.1988). Thus, because the rule of absolute judicial immunity is designed to protect the integrity of the judicial process, by allowing judges to "be at liberty to exercise their functions with independence and without fear of consequences," *Pierson*, 386 U.S. at 554, 87 S.Ct. at 1218, the rule

applies even where the judge is accused of acting maliciously or corruptly, *id.*, however erroneous the act may have been, however injurious in its consequences it may have proved to the plaintiff, and "despite any 'informality with which [the judge] proceeded,' and ... any ex parte feature of the proceeding." *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985) (quoting *Sparkman*, 435 U.S. at 363 and n. 12, 98 S.Ct. at 1108 and n. 12).

The Supreme Court has applied a "functional" approach in deciding whether an act is judicial for purposes of immunity. *Cleavinger*, 474 U.S. at 201–02, 106 S.Ct. at 501. The issue of "immunity analysis rests on functional categories, not on the status of the defendant. Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official." *Id.* (citations omitted). In deciding whether absolute judicial immunity applies a court should consider the nature of the act taken, namely whether it is a function normally performed by a judge, and the expectations of the parties, namely whether they dealt with the judge in his judicial capacity. *Sparkman*, 435 U.S. at 362, 98 S.Ct. at 1107. Other relevant factors include (i) the adversary nature of the process, (ii) the correctability of error on appeal, (iii) the importance of precedent, and (iv) the presence of safeguards that reduce the need for private damage actions as a means of controlling unconstitutional conduct. *Cleavinger*, 474 U.S. at 202, 106 S.Ct. at 501.

In the instant action, although Vasile charges the Justices with perjury, subornation, conspiracy, abuse of legal process, and a laundry list of other specious claims unworthy of recitation, all of the claims stem from judicial decisions and ruling made while lawfully presiding over motions, appeals, special proceedings, and/or hearings properly before their respective courts. The decisions were made by the respective Justices in light of the arguments presented and their experiences with this relentless litigant. Because Vasile repeats the same allegations over and over again without regard to prior

adverse decisions, and because Vasile had brought at least eighteen separate lawsuits against Sheila Enright, Robyn Enright and/or Norman P. Weiss, in the state court system, Justice Underwood's decision to prevent Vasile from initiating another suit against Sheila Enright without prior court approval was not only a legitimate exercise of judicial authority, it was a necessary exercise of judicial authority. Justice Oshrin's decision not to remove Vasile's case from Justice Underwood, after Vasile was dissatisfied with the court's rulings, was an adjudicative determination of a judge in his judicial capacity, and not an administrative decision which could be decided by a non-judicial official. There is no evidence proffered, nor plausible claim suggesting, that either Justice was without jurisdiction to decide the matters or that they acted outside their judicial capacity.

As is often the wont of *pro se* litigants uneducated in the law, a phrase utilized in a reported decision, irrespective of application, will be embraced and repeated in a manner characteristic of a magical incantation. In this instance, Vasile seizes upon the use of the term "ministerial duty," and avers that a breach thereof will abrogate all immunity. It is not the label placed on the act, but rather the character of the act that is critical. Thus, those decisions that are not adjudicative or judicial, but rather strictly administrative in nature, such as the employment decisions in *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988) or the selection of venirepersons in *Ex parte Virginia*, 100 U.S. (10 Otto) 339, 25 L.Ed. 676 (1879), tasks that could be performed by any other official responsible for making such decisions, are not endowed with absolute immunity, but are entitled to qualified immunity. *See Forrester* 484 U.S. at 230, 108 S.Ct. at 545.

Justices Oshrin and Underwood were performing a judicial function with respect to each and every act alleged in the complaint, whether denominated as a "ministerial duty" or otherwise, and because they were not acting in the clear absence of all jurisdiction, they are absolutely immune from suit in this case. Accordingly, the motion to dismiss the action brought on behalf of Defendant Jus-

tice Oshrin and Defendant Justice Underwood on the grounds of absolute judicial immunity is granted in its entirety.

## II. *Res Judicata*

Res judicata, known in present day parlance as claim preclusion, is one of a series of precepts which comprise the jurisprudential doctrine of prior adjudication. Along with collateral estoppel and law of the case, res judicata endeavors to impart consistency and finality to legal decisions. Specifically, res judicata will prevent a party from relitigating a claim if four conditions are met: 1) there was a final judgment on the merits in the first action; 2) the judgment was rendered by a court of competent jurisdiction; 3) the first action involved the same parties or their privities; and 4) the first action involved the same cause of action. *In re Teltronics Services, Inc.*, 762 F.2d 185, 190 (2d Cir.1985); *see also Greenberg v. Bd. of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 168 (2d Cir.1992). The claim preclusion doctrine bars not only those issues actually adjudicated in the first proceeding, but also any other issue or claim that could have been raised or decided, but was not. *See, e.g., Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981); *Clarke v. Frank*, 960 F.2d 1146, 1150 (2d Cir.1992).

By Order dated May 27, 1997, in the action captioned *Carmine Vasile and Cheryl Vasile v. Sheila Enright, Leonard B. Austin, Hon. William L. Underwood, Jr., and James C. Hudson*, 96–CV–3640, this Court adopted in its entirety United States Magistrate Judge E. Thomas Boyle's Report and Recommendation, dated April 30, 1997, dismissing the Vasiles' complaint against Justice Underwood on the alternative grounds of judicial immunity, the Eleventh Amendment, abstention, and the plaintiffs' failure to state a cause of action upon which relief may be granted. In summarizing the relevant facts, this Court borrows heavily from the unpublished April 30, 1997 Report and Recommendation of Magistrate Boyle, a decision previously adopted after *de novo* review.

Justice Underwood presided over an action in New York State Supreme Court, Suffolk

County [Index No. 93–18131] in which Vasile's former wife, Sheila Enright, sued Carmine Vasile for malicious prosecution and intentional infliction of emotional distress. The action was initiated by Ms. Enright in response to Carmine Vasile's filing eighteen lawsuits in state court against Sheila Enright, Robyn Enright, and Norman Paul Weiss, Esq. Mr. Weiss, a defendant herein, was the matrimonial attorney of Sheila Enright, and Robyn Enright is Sheila Enright's daughter and Carmine Vasile's former stepdaughter. By Order dated January 10, 1994, Justice Underwood awarded judgment by default in favor of Sheila Enright, followed by an Order dated July 27, 1994, and entered August 5, 1994, in which Ms. Enright was awarded damages in the amount of $327,-377.95. Subsequent attempts to vacate the judgment of default were unsuccessfully attempted by Vasile, resulting in Justice Underwood's Order, dated October 11, 1995, enjoining Vasile from bringing further motions without prior leave of the court. Vasile defied the injunction and continued to bring additional motions without court approval. Finally, after filing numerous motions in violation of Justice Underwood's rulings, and after this Court's decision in the aforementioned action, an Order of Contempt was entered against Vasile on or about December 3, 1997 and an Order of Commitment was subsequently entered, dated May 5, 1998, subjecting Vasile to fifteen days incarceration.

■ In applying the four conditions to the instant action, the decision of this Court, docket number 96–CV–3640, was a final judgment on the merits rendered by a court of competent jurisdiction involving Carmine Vasile and Justice Underwood. The fourth requirement for applying res judicata is that the two claims constitute the same cause of action. The test for determining what constitutes the same cause of action has been articulated by the Second Circuit in various ways. Relevant criteria are whether a different judgment in the second action would impair or destroy rights or interests established by the judgment entered in the first action, whether the same evidence is necessary to maintain the second cause of action as was required in the first, and whether the

essential facts and issues in the second were present in the first. *Herendeen v. Champion Int'l Corp.*, 525 F.2d 130, 133–34 (2d Cir.1975); *accord Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 727 (2d Cir.1981). More recent Second Circuit cases have omitted the impairment of rights element, and have added "whether the same transaction or connected series of transactions is at issue" to the remaining two factors. *See S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1463–64 (2d Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 57, 139 L.Ed.2d 21 (1997); *Prime Management Co., Inc. v. Steinegger,* 904 F.2d 811, 815 (2d Cir.1990). Other decisions often collapse the various criteria by emphasizing that the crucial element underlying all of these standards is the factual predicate of the several claims asserted, "[f]or it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Saud v. Bank of New York,* 929 F.2d 916, 919 (2d Cir.1991) (quoting *Expert Elec., Inc. v. Levine,* 554 F.2d 1227, 1234 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977)); *accord Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 39 (2d Cir. 1992) ("It is this identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which Woods chose to frame her complaint"), *cert. denied,* 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993); *Ramirez v. Brooklyn Aids Task Force,* 175 F.R.D. 423, 427 (E.D.N.Y.1997). However phrased, Vasile's claims against Justice Underwood mimic the allegations in the prior action, violations of constitutional rights and conspiracy.

The gravamen of Vasile's complaints, whether lodged against the judges, the attorneys, or Sheila Enright, and irrespective of the legal theories asserted therein, stem from his utter disdain for the default judgment rendered by Justice Underwood in favor of Sheila Enright and against Carmine Vasile, and his unyielding attempts to reverse, overrule, circumvent or attack the judgment. Therefore, because Plaintiff's allegations against Justice Underwood arise out of the same factual setting—the default judgment and all subsequent denials for re-

view or reversal—res judicata bars the instant action.

Claim preclusion was also asserted on behalf of Justice Oshrin because his involvement with the state proceeding resulting in the default judgment was known to the Plaintiff when he commenced the first federal action. Specifically, Plaintiff appeared before Justice Oshrin on January 10, 1996, and therefore, it is averred, he should have been named in the conspiracy in the first complaint. Although courts in the past have applied res judicata to preclude suit against defendants who were not parties to the first litigation, see, Gargiul v. Tompkins, 739 F.2d 34, 37 (2d Cir.1984); Gambocz v. Yelencsics, 468 F.2d 837 (3d Cir.1972), Morgan Consultants v. American Tel. and Tel. Co., 546 F.Supp. 844 (S.D.N.Y.1982), this viewpoint has not received unanimous approbation. Accordingly, and because there are other unequivocal reasons to dismiss the action against Justice Oshrin, the Court declines to do so on res judicata grounds. The Court also declines to consider the applicability of the defense of collateral estoppel, as it was not raised.

### III. Rooker–Feldman Doctrine

 As a separate and independent basis to dismiss this action, Defendants Oshrin and Underwood raise the doctrine pronounced in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and Rooker v. Fidelity Trust Co. 263 U.S. 413, 414–17, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). Coalescing the Supreme Court's two holdings instructs that a federal district court has no jurisdiction to consider collateral attacks to state court judgments, as such determination would be an exercise of appellate jurisdiction whereas the district courts are limited strictly to original jurisdiction. A challenge under the Rooker–Feldman doctrine is for lack of subject matter jurisdiction and may be raised at any time by either party or sua sponte by the court. Moccio v. New York State Office of Court Admin., 95 F.3d 195, 198 (2d Cir. 1996) (citations omitted).

In Rooker, the petitioner sued in district court to have the judgment of the Indiana state court declared null and void because the judgment violated the Contract Clause, the Due Process Clause and the Equal Protection Clause. In affirming the district court's dismissal for lack of subject matter jurisdiction, the Supreme Court held that only the Supreme Court could entertain an appeal from a state court judgment. In particular, "[i]f the decision [of the state court] was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication." 263 U.S. at 415, 44 S.Ct. at 150. The Court further found that "[u]nder the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgement for errors of that character [because to] do so would be an exercise of appellate jurisdiction [and the] jurisdiction possessed by the District Courts is strictly original." Id. at 416, 44 S.Ct. at 150 (citations omitted). Moreover, if a litigant in state court fails to file a timely appeal, "after that period elapses an aggrieved litigant cannot be permitted to do indirectly what he can no longer do directly." Id.

In Feldman, the Supreme Court extended the Rooker doctrine beyond finding that district courts do not have jurisdiction to hear any challenge to the judicial determinations of state courts. Further, to the extent that a plaintiff's federal claims are "inextricably intertwined" with the state court's determinations, a federal district court does not have jurisdiction to decide that issue. Feldman, 460 U.S. at 482–84 n. 16, 103 S.Ct. at 1316 n. 16.

The Second Circuit in Moccio noted that the Supreme Court gave little guidance as to the extent and meaning of "inextricably intertwined" to the state court determinations. At the one end, if a plaintiff raises identical claims in both the federal and state actions, the federal court clearly lacks jurisdiction. Moccio, 95 F.3d at 199. On the other hand, where the claims were never presented in the state court proceedings and the plaintiff did not have the opportunity to present the

claims in those proceedings, the claims are not "inextricably intertwined" and therefore are not barred under the *Rooker–Feldman* doctrine. *Id.*

 At a minimum, "inextricably intertwined" means that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding, subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of collateral estoppel or issue preclusion. *Id.* at 199–200. Collateral estoppel applies only if: (1) the issue in question was actually and necessarily decided in a prior proceeding; and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding. *Moccio,* 95 F.3d at 200. Under *Rooker–Feldman,* therefore, a plaintiff may not institute an action in federal district court that either: (1) directly challenges the holding or decision of a state court, or (2) indirectly challenges the holding or decision of a state court by raising issues in federal court that are "inextricably intertwined" with the state court's decision. In either case, the federal district court would be sitting as an appellate tribunal over the state courts where it has no constitutional or congressional jurisdiction to do so.

In *Moccio,* for example, the plaintiff had previously filed an Article 78 proceeding challenging the New York State Office of Court Administration's decision to terminate his employment. The action was transferred to the Appellate Division and dismissed and the plaintiff thereafter failed to appeal. The plaintiff then filed a § 1983 action claiming that his termination violated the Due Process Clause and the Equal Protection Clause, although he had not raised these claims in his Article 78 proceeding. The Second Circuit then found that as to plaintiff's procedural due process claim, the Article 78 proceeding was the process due and to hold that it was insufficient would run directly contrary to the prohibition in *Feldman* against lower federal court jurisdiction over challenges to state court proceedings, even if those challenges allege that the state court's action was unconstitutional. 95 F.3d at 200.

Similarly, in the present action, to adjudicate any of plaintiff's claims would run directly afoul of the *Rooker–Feldman* doctrine prohibiting review of state court decisions. This Court, as a federal district court, is without subject matter jurisdiction to entertain claims that the service of process of the underlying default judgment entered by the Honorable Justice William Underwood, Suffolk County Supreme Court on or about July 27, 1994, was defective. This Court cannot entertain challenges to the default judgment or the enforcement thereof, or the contempt proceedings arising therefrom, or the subsequent decisions of the New York State courts affirming the default judgment. All of Vasile's claims against the Justices arise from decisions rendered in response to Vasile's attempt to challenge the default judgment. In addition, there is no merit to Vasile's claims as they pertain to the filing or certification of the various judicial decisions, as the Second Circuit recently noted, "it cannot be the meaning of *Rooker–Feldman* that, while the inferior federal courts are barred from reviewing final decisions of state courts, they are free to review interlocutory orders." *Doctor's Assoc., Inc. v. Distajo,* 107 F.3d 126, 138 (2d Cir.1997). Any constitutional error committed by the New York State Supreme Court, Suffolk County, in Vasile's default judgment or in the contempt proceedings, whether in the interpretation of statutes or procedurally, is a matter for the state appellate courts to review, or the United States Supreme Court if it grants certiorari. As the Supreme Court noted in *Rooker,* even if the state court is wrong, the judgment is an effective and conclusive adjudication until modified or reversed in the appropriate appellate proceeding. 263 U.S. at 415, 44 S.Ct. at 150.

Accordingly, because the *Rooker–Feldman* doctrine divests this Court of jurisdiction to review the underlying New York State court decisions, the motion to dismiss on behalf of Defendants Justices Oshrin and Underwood is granted in its entirety.

The Plaintiff is now on notice that to challenge the default judgment, his sole recourse, if he has not done so already, is to appeal to the United States Supreme Court. The

Plaintiff is also instructed that he may also appeal my instant decision to the Second Circuit Court of Appeals.

## I. *Defendant Norman P. Weiss, Esq.*

Defendant Norman Weiss moves to dismiss the action against him in its entirety on numerous independent grounds, including: (1) failure to state a claim upon which relief can be granted; (2) Plaintiff does not have standing to sue; (3) the claims are time-barred under the applicable statute of limitations; and (4) the court should deny to exercise supplemental jurisdiction over the state law claims.

Plaintiff Carmine Vasile's complaint against Defendant Weiss alleges the litany of claims asserted against the other defendants including interstate fraud and criminal enterprise, malicious abuse of legal process, slander, money laundering, intentional infliction of emotional distress and defamation. The factual predicate for these claims appears to be a statement made by Weiss to a Department of Defense Investigator, which occurred on or before March 30, 1990, in which the investigator reported that

> "Weiss stated that the divorce action initiated by Sheila through her first attorney, Sally Badami, charges Subject [Carmine Vasile] with cruelty and waste and dissipation. The cruelty charges stem from incidents Sheila documented which describe Subject's physical assaults upon her. The waste and dissipation charges Subject with fraud, in that he withdrew money, approximately $35,000.00–$40,000.00 from his step-daughter Robyn's account, and using Sheila's money for his own benefit."

Plaintiff's Exhibit N.

In addition, Vasile alleges that Weiss provided perjurious testimony on June 29, 1994 and October 9, 1996. As indicated earlier, Norman Weiss, Esq. represented Sheila Enright in the divorce proceeding.

### 1. *Criminal Allegations*

██ As discussed *supra,* the criminal charges raised are not properly raised in a civil action as there is no statutory authorization for a private right of action. With re-spect to the allegations of criminal enterprise, the Plaintiff has failed to allege the minimal requisites. As with Defendant Dean Witter, Vasile's allegations against Defendant Weiss do not adduce two predicate acts or a pattern of racketeering activity. The allegations of criminal enterprise appear to derive from Weiss' use of Intercounty Judicial Services for service of process. Once again, to the extent that the service of process of the underlying default judgment was defective, that issue has already been litigated in the state court system. Justice Underwood, by Order dated August 24, 1995, determined that the court properly obtained *in personam* jurisdiction over Carmine Vasile pursuant to CPLR § 308(4). Accordingly, as the basis for Vasile's injury resulting from the criminal enterprise has already been necessarily decided in a prior litigation, Plaintiff is collaterally estopped from raising it here and it cannot be the basis for his alleged RICO violation. Any allegations of conspiracy, fail for the same reasons as stated with respect to Dean Witter. As New York does not recognize conspiracy as an independent cause of action in tort, a cause of action for conspiracy to do something unlawful is valid only to the extent that the underlying conduct alleged states a cause of action, and none has been adequately pled with respect to Norman Weiss.

### 2. *Abuse of Process*

██ The elements of an abuse of process claim under New York law are: (1) regularly issued civil or criminal process, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective. *Curiano v. Suozzi,* 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324 (1984); *see also Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994) (requiring plaintiff to show that defendant subsequently employed what was initially legal process in order to obtain a collateral objective beyond the legitimate ends of the process). The collateral objective element is separate and distinct, and must occur after the process is issued; the mere fact that process has been issued does not give rise to a claim. *PSI Metals v. Firemen's Ins. Co. of Newark, N.J.,* 839 F.2d 42

(2d Cir.1988) (no abuse of process under New York law where the defendant merely filed a counterclaim with the intention of causing plaintiff to expend money in defending the claim); *Perry v. Manocherian,* 675 F.Supp. 1417, 1429 (S.D.N.Y.1987) (issuance of a summons and complaint, even if made with the intent to coerce settlement and create bad publicity for the defendant, does not constitute abuse of process under New York law); *Curiano,* 63 N.Y.2d at 117, 480 N.Y.S.2d at 468, 469 N.E.2d 1324 (malicious motive in issuing a summons does not establish abuse of process).

In a classic instance of the pot calling the kettle black, Vasile alleges abuse of legal process. This, from the man who in the face of an adverse decision has the temerity to bring an order to show cause for identical relief and then initiates a new lawsuit raising analogous claims. Nonetheless, with respect to his allegations of abuse of legal process, the only legal action initiated by Defendant Weiss arose in his role as Sheila Enright's attorney in the divorce proceedings. There are no assertions indicating Weiss has individually initiated suit against Vasile, and the motion by Weiss for costs and sanctions is clearly warranted under existing law and supported by the factual history. Accordingly, because Plaintiff has failed to adduce any evidence of ongoing abuse of the legal process, Defendant Weiss' motion to dismiss Vasile's claim of abuse of process is granted in its entirety.

A separate and independent basis to dismiss Vasile's abuse of process claim, to the extent that the claim derives from Weiss' representation of Sheila Enright, is the one year statute of limitations, which has undeniably run its course. *See Beninati v. Nicotra,* 239 A.D.2d 242, 657 N.Y.S.2d 414, 415 (1st Dep't 1997); *Bittner v. Cummings,* 188 A.D.2d 504, 591 N.Y.S.2d 429 (2d Dep't 1992); CPLR 215(3).

### 3. *Defamation*

▮ Vasile claims that Defendant Weiss made defamatory statements on three occasions. The first statement, quoted *supra,* was made to a Department of Defense Investigator. That statement occurred on or be-

fore March 30, 1990. The second statement purportedly occurred on June 29, 1994 and the final statement on October 9, 1996.

▮ In New York, the elements of a claim for defamation include (1) a false and defamatory statement of fact; (2) regarding the plaintiff; (3) publication to a third party; and (4) injury to the plaintiff. *Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 61 (2d Cir.1993); *Hayes v. Sweeney,* 961 F.Supp. 467 (W.D.N.Y.1997).

▮ As an initial consideration Vasile's claims of defamation must be dismissed as time-barred. In New York, an action to recover damages for defamation must be commenced within one year. CPLR § 215(3); *see also Celi v. Canadian Occidental Petroleum Ltd.,* 804 F.Supp. 465, 469 (E.D.N.Y.1992). For the purpose of computing the running of the one year statute of limitations, the causes of action accrue on the day the statements at issue were made, not from when the plaintiff learns of them. *See Papeskov v. Brown,* No. 97 Civ. 5351(SS), 1998 WL 299892, at *5 (S.D.N.Y. June 8, 1998). As the statements were made in 1990, 1994 and on October 9, 1996, and suit was initiated on December 9, 1997, the one year statutory period has expired and Vasile's claims of defamation must be dismissed with prejudice.

▮ In addition, public policy dictates that certain communications, although defamatory, cannot serve as the basis for the imposition of liability in a defamation action. *Shenkman v. O'Malley,* 2 A.D.2d 567, 572, 157 N.Y.S.2d 290, 295 (1st Dep't 1956). Communications falling within this category are deemed privileged, and are granted either absolute or qualified immunity from suit. *Id.* "In the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged, if, by any view or under any circumstances, they are pertinent to the litigation." *Aequitron Medical, Inc. v. Dyro,* 999 F.Supp. 294, 297–98 (E.D.N.Y.1998) (internal citations omitted). Pertinency is liberally construed and will constitute "anything that may possibly or plausibly be relevant or pertinent with the barest rationality, divorced from any palpa-

ble or pragmatic degree of probability." *O'Brien v. Alexander*, 898 F.Supp. 162, 171 (S.D.N.Y.1995), *aff'd*, 101 F.3d 1479 (2d Cir. 1996) (citing *Grasso v. Mathew*, 164 A.D.2d 476, 564 N.Y.S.2d 576, 578 (3d Dep't 1991)). Therefore, the statements purportedly uttered by Weiss, whether defamatory or not, and described by Vasile as perjured testimony, given on October 9, 1996 before Justice Oshrin and on June 29, 1994 before Justice Underwood are absolutely privileged and immune from a suit in defamation. In addition, if the comments made by Weiss in 1990, as appears from the report, amounted to relaying his clients alleged claims in the divorce suit, they are equally privileged. *See The Savage is Loose Co. v. United Artists Theatre Circuit, Inc.*, 413 F.Supp. 555 (S.D.N.Y. 1976).

With respect to the statement made in 1990, the facts do not indicate whether Weiss provided the testimony in response to a subpoena, a circumstance often protected by an absolute privilege. *See Boice v. Unisys Corp.*, 50 F.3d 1145, 1149 (2d Cir.1995) ("under New York law, a person who discloses information to a government officer or agency enjoys an absolute immunity from a defamation suit based on that disclosure so long as: (1) the disclosure was compelled by subpoena; (2) the disclosure materially responded to the subpoena; and (3) the person did not set the investigation in motion, or otherwise manipulate the investigative process to promote the libel."). There are other considerations which might preclude a claim for defamation, and whether the statements were false is still unestablished, however, the defamation claims are time-barred and must therefore fail. Accordingly, Defendant Weiss' motion to dismiss the defamation claims with prejudice is granted.

#### 4. *Intentional Infliction of Emotional Distress*

Under New York law, the four elements comprising a claim for intentional infliction of emotional distress are: 1) extreme and outrageous conduct; 2) intention to cause distress, or knowledge that defendant's conduct would result in emotional distress; 3) severe emotional distress; and 4) a

causal connection between the defendant's conduct and the plaintiff's injury. *See Gay v. Carlson*, 60 F.3d 83, 89 (2d Cir.1995) (applying New York law). New York courts have strictly applied these elements. *Id.* Vasile's conduct over the past year is characteristic of one who suffers from emotional distress or disturbance, satisfying the third element. Specifically, Vasile claims that Weiss' behavior caused Vasile to incur large legal fees and to incur large financial loss via the dissipation of marital assets. Advocating on behalf of one's client in a divorce proceeding typically results in the opposition's incurring legal fees and dissipating marital assets. Vasile has failed to even minimally establish the first two of the four elements required to prevail on a claim for intentional infliction of emotional distress. There has been no showing of outrageous conduct or the requisite intent. In order for a claim of intentional infliction of emotional distress to be actionable, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86 (1983) (quoting Restatement (Second) of Torts § 46, comment d (1979)); *see also* Prosser, Handbook of the Law of Torts § 12, at 56 (4th ed.1971) ("there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind"). Thus, as the Plaintiff has failed to allege outrageous conduct and the facts cannot support such a finding, the Defendant Weiss' motion to dismiss Vasile's claim for intentional infliction of emotional distress is dismissed with prejudice.

In addition, a one year limitations period applies to the tort of intentional infliction of emotional distress. *See* CPLR § 215; *Goldner v. Sullivan, Gough, Skipworth, Summers and Smith*, 105 A.D.2d 1149, 482 N.Y.S.2d 606, 608 (4th Dep't 1984). The conduct alleged to have caused Vasile's financial woes and his ultimate emotional distress arose during Weiss' representation of Sheila Enright. The judgment of divorce was en-

tered in or about September 1990. The statute of limitations has expired and Vasile's claim of intentional infliction of emotional distress is dismissed.

#### 5. Prima Facie Tort

 Under New York law, harm which is intentionally inflicted is prima facie actionable, unless justified. *Curiano,* 63 N.Y.2d at 117, 480 N.Y.S.2d at 469, 469 N.E.2d 1324. This principle has evolved into a specific cause of action with four elements: (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful. *Id.* Additionally, the plaintiff must allege that the defendant was motivated by "disinterested malevolence," *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712, 721, 451 N.E.2d 459 (1983), thus "if a defendant's motive is tainted by self interest, profit or business advantage, a prima facie tort action cannot be sustained." *Barnum v. Millbrook Care Ltd. Partnership,* 850 F.Supp. 1227, 1239 (S.D.N.Y.) (applying New York law), *aff'd,* 43 F.3d 1458 (2d Cir. 1994).

Here, Vasile's allegations, as described *supra,* do not put forth any evidence that Weiss was motivated by "disinterested malevolence," rather, he was interested in his client's welfare. Accordingly, to the extent Vasile's complaint sounds in prima facie tort, the cause of action is dismissed with prejudice.

 Finally, it is noted that the claims raised against Defendant Weiss stem from his representation of Sheila Enright in her divorce proceedings. To the extent the claims currently alleged were decided in a prior suit against Sheila Enright, the doctrine of prior adjudication may foreclose the instant action. The New York law of collateral estoppel forecloses a second litigation of an issue if (1) the issue sought to be precluded is identical to the issue involved in a prior action; (2) there was a final determination on the merits of that issue in the prior proceeding; (3) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the point. *See e.g., Levy v. Kosher*

*Overseers Ass'n of Am., Inc.,* 104 F.3d 38, 41 (2d Cir.1997) (citing *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987)). Because Carmine Vasile's claims against Defendant Norman Weiss must be dismissed on numerous alternative grounds, it is not necessary to decide whether these requirements are satisfied in this case.

#### VI. Vasile's Motion for Partial Summary Judgment

As an initial consideration, the defendants separately opposed Vasile's motion for partial summary judgment on procedural grounds. Vasile initiated this action on December 9, 1997, and then moved for partial summary judgment on December 15, 1997. Pursuant to Federal Rule of Civil Procedure 56(a), a party may not move for summary judgment until after the expiration of 20 days from commencement of the action. Here, Vasile moved for partial summary judgment six days after commencing the action, and therefore, the motion is procedurally deficient. In addition, motions for summary judgment must be accompanied by a Statement of Material Facts, as required under Local Rule 56.1 of the Eastern District of New York. However, the Plaintiff subsequently filed for partial summary judgment on March 17, 1998. In light of the fact that Vasile's claims are dismissed as a matter of law, Vasile's pending motions for complete and partial summary judgment must be denied in their entirety with prejudice.

#### VII. Other Vasile Motions

Interspersed among Vasile's claims are demands (1) that I recuse myself from this case; (2) for a change of venue; (3) to supplement the pleadings, (4) to levy sanctions against the defendants; along with (5) numerous motions to punish.

 The Court has considered, but will not grant, Vasile's motion for recusal. Pursuant to 28 U.S.C. § 455(a), a federal judge must recuse herself in any proceeding where her "impartiality might reasonably be questioned," where the judge "has a personal

bias or prejudice concerning a party." *Id.* § 455(b)(1). The ultimate inquiry is whether "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned." *United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992). Recusal motions are committed to the sound discretion of the district court. *United States v. Conte,* 99 F.3d 60, 65 (2d Cir.1996). Vasile's recusal motion is based upon a February 2, 1998 hearing in which this Court denied Plaintiff's Order to Show Cause for a default judgment, a change of venue, and his motion to amend the judgment, and imposed restrictions upon Vasile's further filing without prior approval of the Court. Although Vasile charges that this Court displayed bias, prejudice, lack of impartiality, advocated for the Defendant Weiss and committed misprision of felony by suborning crime, these conclusory accusations stem from his dissatisfaction with the Court's ruling. These personal attacks have become Vasile's modus operandi and they mimic the accusations lodged against other judges who have ruled against Vasile. Under § 455(a), the moving party must demonstrate an "objectively reasonable basis for questioning a judge's impartiality." *In re International Business Machines Corp.,* 45 F.3d 641, 644 (2d Cir.1995). Under § 455(b)(1), recusal is mandated only where the district court harbors actual prejudice or bias against a defendant, and "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States,* 510 U.S. 540, 553, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). Because Vasile's accusations merely repeat a series of complaints that stem from this Court's prior denial of various motions, recusal is not warranted.

 Vasile has also requested, on this and prior occasions, a change of venue. He requests a change to the Southern District of New York based upon this Court's bias and prejudice exhibited towards him. As demonstrated above, there is no merit to Vasile's motion for recusal. Pursuant to 28 U.S.C. 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Vasile does not provide facts supporting the required finding that venue would be proper in the transferee district. Moreover, Rule 50(e) of the Eastern District's Guidelines for the Division of Business, provides,

> Related cases shall be assigned by the clerk to the judge to whom was assigned the case with the lowest docket number in the series of cases. The clerk shall advise the judge of such assignment of a "related case." In the interest of judicial economy, all habeas corpus petitions filed by the same petitioner shall be deemed related. Likewise, all *pro se* civil actions filed by the same individual shall be deemed related.

Accordingly, the Court will not grant Vasile's motion for a change of venue to the Southern District of New York.

 Vasile's numerous submissions include a request to supplement or amend the pleadings. These are usually followed by declarations of "New Evidence." Vasile has been afforded every reasonable opportunity to demonstrate that he has a valid claim, and the Court has reviewed all of the documents submitted in support. Leave to amend or supplement the pleadings is properly denied, however, if the amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Because Vasile's claims have all been dismissed as a matter of law on numerous alternative grounds, Vasile's motion to supplement the pleadings would be a futile exercise, and is accordingly denied.

Vasile's motion to sanction the Defendants is not meritorious and is denied in its entirety. In addition, all other claims raised by Vasile that have not been addressed in this decision have been reviewed by the Court and are without merit. Accordingly, for all the aforementioned reasons, Vasile's numerous motions are denied in their entirety with prejudice.

### VIII. *Vasile's Bankruptcy Filing*

 Mr. Vasile filed a voluntary petition on May 20, 1998, seeking relief under Chapter 13 of the Bankruptcy Code. Effective immediately upon the filing of the petition,

the automatic stay provisions of 11 U.S.C. § 362 take effect. *In re Fugazy Exp., Inc.,* 982 F.2d 769, 776 (2d Cir.1992).

The automatic stay provision of the Bankruptcy Code provides, in relevant part:

[A bankruptcy petition] ... operates as a stay, applicable to all entities, of ... the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim **against the debtor** that arose before the commencement of the case under this title....

11 U.S.C. § 362(a)(1)(1994)(emphasis added).

■ "The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay." *In re Baldwin–United Corp. Litigation,* 765 F.2d 343, 347 (2d Cir.1985).

1. *Applicability of the Stay*

■ The section 362 stay created by the filing of a bankruptcy petition is automatic and immediate. *In re Tampa Chain Co., Inc.,* 835 F.2d 54, 55 (2d Cir.1987). The debtor may neither unilaterally waive, nor limit, the scope of the automatic stay. *Ostano Commerzanstalt v. Telewide Sys., Inc.,* 790 F.2d 206, 207 (2d Cir.1986) (citations omitted). For the stay to apply to the instant action, the action must have been commenced prior to Vasile's filing a petition for bankruptcy protection. This requirement is clearly satisfied.

■ However, the stay only applies when the action is "against the debtor." An action is "against the debtor" if it was initiated against the debtor. *Barbier v. Shearson Lehman Hutton,* 943 F.2d 249, 250 (2d Cir.1991); *Commerzanstalt,* 790 F.2d at 207. The § 362 stay provision "does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate". *Carley Capital Group v. Fireman's Fund Ins. Co.,* 889 F.2d 1126, 1127 (D.C.Cir.

1989)(per curiam). Thus § 362(a) does not "prevent entities against whom the debtor proceeds in an offensive posture—for example, by initiating a judicial or adversarial proceeding—from 'protecting their legal rights.' " *In re Financial News Network Inc.,* 158 B.R. 570, 573 (S.D.N.Y.1993)(quoting *Martin–Trigona v. Champion Federal Savings and Loan Ass'n,* 892 F.2d 575, 577 (7th Cir.1989)).

■ "Whether an action is 'against the debtor' is determined by examining the debtor's status at the time the proceedings were initiated, and not by looking to which party has appealed." *Commerzanstalt,* 790 F.2d at 207. The court looks to the proceeding at its inception, however, the inquiry does not end there, because "all proceedings in a single case are not lumped together for purposes of automatic stay analysis." *Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1204 (3rd Cir.1991). Rather, "[m]ultiple claim[s] must be disaggregated so that particular claims, counterclaims, cross-claims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay". *Id.* at 1204–05.

At the inception of the case at bar, Vasile asserted claims for relief against the Defendants. In response, the Defendants moved to dismiss and/or for summary judgment and asserted counterclaims for costs and attorneys' fees. Accordingly, the counterclaims asserted against the Plaintiff/debtor will be stayed pending final determination of the bankruptcy petition. *See Koolik v. Markowitz,* 40 F.3d 567, 568 (2d Cir.1994) ("an answer that asserts a counterclaim against a plaintiff who becomes a bankruptcy debtor is an 'an action or proceeding against the debtor' within the meaning of § 362(a)(1), notwithstanding the fact that the plaintiff initiated the lawsuit"). However, the primary claims raised by Vasile are claims asserted by, and not against, the debtor, and are therefore not subject to the stay and can be immediately adjudicated.

IX. *Defendants' Motions for Sanctions, Costs and Attorneys Fees*

The Defendants have individually moved the Court to impose sanctions against Vasile

in the form of a monetary penalty and injunctive relief to arrest Vasile's continued access to the courts. The Defendants also seek to recover their costs and attorneys' fees.

### 1. *Sanctions:*

As indicated in the main body of this Memorandum and Order, presently pending before the Court are fourteen motions in this highly contentious litigation, which represents only one of many interminable suits initiated by Plaintiff Carmine Vasile. Unfortunately, resolution of the instant action will likely be followed by more of the same. It is this Court's intention to prevent that eventuality.

 The courts have historically made every reasonable effort to construe the claims and defenses of *pro se* litigants as liberally as possible, and they are "afforded every reasonable opportunity to demonstrate that [they have] a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984). Even when a plaintiff confuses various legal theories, the courts will scrutinize the complaint to determine whether the facts alleged would support a different theory. *See, e.g., Frasier v. General Elec. Co.*, 930 F.2d 1004, 1008 (2d Cir.1991). However, "at some point in a lawsuit even *pro se* litigants must make clear to the court their claims and the facts that they believe entitle them to specific relief." *Salahuddin v. Coughlin*, 781 F.2d 24, 29 (2d Cir.1986). Needless to say, the constant repetition of the same "claims" previously adjudged infirm, does not miraculously breathe new life into them.

The right of self-representation incorporates a venerable and rich tradition deeply seated in this nation's jurisprudence. *See Iannaccone v. Law*, 142 F.3d 553, 556–57 (2d Cir.1998). However, the accommodation of that right can entail a societal cost. When the cost implicates the ability and capacity of a court to serve the needs of the community at large, the price becomes too great to shoulder. Accordingly, and out of necessity, the law has evolved on a case by case basis to manage the right of self-representation as a qualified, and not an unfettered, right. The "Vasile ordeal" is a exemplary candidate for such qualification.

Mr. Vasile is quickly joining the ranks of the notorious pro-se "frequent-filers" who repeatedly invoke the process of the court, yet refuse to accept the determinations resulting therefrom.[4] In so doing, they needlessly congest the courts' dockets while overburdening already limited judicial human resources at the expense of litigants seeking their day in court.

A representative sampling of Vasile's vexatious and incessant motion practice and letter applications submitted to the Court for the six month period of November 19, 1997, through May 18, 1998, reveal 47 such submissions outlined below.[5] Yet Vasile continued

---

4. Although each court and judge has its own persistent petitioners, within the Second Circuit the infamous include: (1) Anthony R. Martin–Trigona—Martin–Trigona was the source of literally hundreds of frivolous lawsuits, motions and miscellaneous pleadings of a vicious, vitriolic, vituperative and vexatious nature intending to harass the unfortunate many who have crossed his path through purposeful efforts to delay and jaundice court proceedings; *see, e.g., In re Martin–Trigona*, 737 F.2d 1254 (2d Cir.1984); (2) George Sassower—Sassower engaged in repeated attempts to relitigate the dissolution of Puccini Clothes, Ltd., which persisted for over a decade in state and federal courts with each additional suit joining the previous judge who ruled against him. Sanctions, injunctions and contempt citations did not prevent him from filing, and he instituted an additional nine suits in the Southern and Eastern Districts of New York, followed by six appeals to the Second Circuit, with identical suits in six other federal district courts and appeals in the Third, Fourth, Sixth, Eighth, and Ninth Circuits. *See, e.g., Sassower v. Abrams*, 833 F.Supp. 253 (S.D.N.Y. 1993); (3) Richard Becker—Richard Becker brought 17 actions in the Southern District of New York, 16 actions in the Eastern District of New York, and commenced 19 age discrimination charges with the EEOC in Boston and 124 with the EEOC in New York. *See, e.g., Becker v. Dunkin' Donuts of America, Inc.*, 665 F.Supp. 211 (S.D.N.Y.1987); and (4) Marshall P. Safir— Marshall Safir filed 11 court actions stemming from "wrongs" committed in 1965 and 1966. The first suit was initiated in 1966 and the eleventh action was commenced in 1985. *See, e.g., Safir v. United States Lines, Inc.*, 792 F.2d 19 (2d Cir.1986).

5. The following table includes most, although not all, of Vasile's submissions and his own stylized captions during the six month period.

| DATE SUBMITTED | DOCKET NUMBER | CAPTION |
|---|---|---|
| 11/19/97 | 97–CV–6848 | Notice of Removal |
| 11/26/97 | 97–CV–6848 | Affidavit of Prejudice Pursuant to F.R.C.P. Rules 144, 1404, 1412 Bias & Prejudice & Partiality of Magistrate Boyle & Request for Change of Venue |
| 12/15/97 | 97–CV–7241 | Notice of Motion for Summary Judgment Against Defendant Weiss Pursuant to F.R.C.P. Rule 56 |
| 1/14/98 | 97–CV–7241 97–CV–7987 | Subpoena, So Ordered & Complaint of Ongoing F.R.C.P. Rule 79 Violations Resulting in a Falsified Record on Appeal in the Within Action |
| 1/20/98 | 97–CV–6848 | Order to Show Cause for Preliminary Injunction and Temporary Restraining Order and to Punish Pursuant to F.R.C.P. Rules 65, 11 & 18 U.S.C. § 1964 Title 42 U.S.C. §§ 1983, 1985, U.S. Constitution, Amendments V. VI. XIV |
| 1/20/98 | 97–CV–7241 | Pursuant to F.R.C.P. Rule 60(b) Mistake of Fact, New Evidence Fraud & Misconduct & to Punish Pursuant to Rule 11 & 18 U.S.C. § 1964 [RICO], 42 U.S.C. §§ 1983, 1985 |
| 1/21/98 | 97–CV–6848 97–CV–7241 | Demand for Inspection of the Complete Rules, Forthwith |
| 1/22/98 | 97–CV–6848 | Order to Show Cause Upon A Mistake of Fact and for a Temporary Restraining Order and to Punish Pursuant to F.R.C.P. Rules 60 & 65, 1446 |
| 1/26/98 | 97–CV–7241 | Order to Show Cause for Default Judgment Against Defendant–Weiss Pursuant to F.R.C.P. Rules 55, 56, 60, 42 U.S.C. § 1985, 18 U.S.C. § 1964 |
| 1/27/98 | 97–CV–7241 | Order to Show Cause for Default Judgment Against Defendant–Weiss pursuant to F.R.C.P. Rules 55, 56, 60, 42 U.S.C. § 1985, 18 U.S.C. § 1964 |
| 1/27/98 | 97–CV–7241 | Affidavit in Support With Memorandum of Law Pursuant to F.R.C.P. Rule 60(b), Mistake of Fact, New Evidence, Fraud & Misconduct & To Punish Pursuant to Rule 11 & 18 U.S.C. § 1964 [RICO], 42 U.S.C. §§ 1983, 1985 |
| 1/29/98 | 97–CV–6848 97–CV–7241 | Follow Up Demand for Inspection of the Complete Rules, Forthwith |
| 1/30/98 | 97–CV–6848 | Motion Pursuant to F.R.C.P. Rules 59(e), 1446 |
| 2/3/98 | 97–CV–6848 | F.R.C.P. Rules 59(e) Motion & Permission to Make a Motion for a Change of Venue to the Southern District upon Your Intimidating and Unwarranted Animosity Exhibited Before Your Court While Raising F.R.C.P. Rule 79 Violations and Other Misconduct Pursuant to Rule 176 [*Vasile v. Dean Witter et al.* Docket No. CV–97–7241] |
| 2/5/98 | 97–CV–7241 | Notice to Admit Pursuant to F.R.C.P. Rule 36 |
| 2/9/98 | 97–CV–7241 | Supplemental Affidavit in Support *New Evidence* |
| 2/9/98 | 97–CV–7241 | Request for Clarification of defendant-Weiss Position Per his February 3rd Letter |
| 2/11/98 | 97–CV–7241 | Nullification *en masse* of all Yellon–Gang actions commenced/joined by fraudulent affidavits of service served upon State and Federal Courts, pursuant to the 5th & 14th Amendments, F.R.C.P. Rule 4, NYS CPLR §§ 308, 5015(c): "Thompson's Law" extended to the Federal Jurisdiction. |
| 2/13/98 | 97–CV–7241 | *Answer in Opposition* to Defendants' Notices of Motion & Cross Motions to Dismiss with, Memorandum of Law & to Punish & Strike for Misprision of Felony, Etc. pursuant to Rule 11, 18 U.S.C. § 1964 [RICO], 42 U.S.C. §§ 1983, 1985 & Motion for a Change of Venue |
| 2/17/98 | 97–CV–7241 | *Order to Show Cause* for Preliminary Injunction and Temporary Restraining Order Pursuant to F.R.C.P. Rule 65 |
| 2/19/98 | 97–CV–7241 | Permission to Move the Court by Order to Show Cause Pursuant to Rule 65 and this Court's Injunction So Ordered on February 2nd, 1998 |
| 3/3/98 | 97–CV–7241 | Request for Reconsideration & Notice of Conflict & Grounds for Recusal |
| 3/5/98 | 97–CV–7241 | Request to Rescind Magistrate Boyle's sua sponte Order dated February 26, 1998 |
| 3/10/98 | 97–CV–7241 97–CV–5530 97–CV–6716 | Notice of Potential Conflicts |

| Date | Case No. | Description |
|---|---|---|
| 3/10/98 | 97–CV–7241 | Permission to Amend My Complaint as a Matter of Right Pursuant to [*DOS v. Yellon*, Complaint # 97–3307] |
| 3/15/98 | 97–CV–7241 | Second Request for Permission to Amend My Complaint, as a Matter of Right, Upon Dean Witter's Scandalous Reply Memorandum of Law, and to Strike |
| 3/16/98 | 97–CV–7241 | *Answer in Opposition* to Defendants' Notices of Motion & Cross Motions to Dismiss with, Memorandum of Law & to Punish & Strike for Misprision of Felony, Etc. Pursuant to Rule 11, 18 U.S.C. § 1964 [RICO], 42 U.S.C. §§ 1983, 1985 & Motion for a Change of Venue |
| 3/17/98 | 97–CV–7241 | Notice of Motion for Summary Judgment Pursuant to F.R.C.P. Rule 56 |
| 3/21/98 | 97–CV–7241 | Opposition to Weiss' Letter Motion Dated March 18, 1997, Upon the Grounds that Christopher Thompson, Esq's. Characterization of Weiss as a "Mob Lawyer" is True |
| 3/31/98 | 96–CV–3640 | Order to Show Cause to Vacate Judgment Pursuant to F.R.C.P. Rule 60(b)(20(3) & Temporary Restraining Order Pursuant to F.R.C.P. Rules 11, 65 42 U.S.C.A. §§ 1983, 1985, 18 U.S.C.A. §§ 4, 1001, 1501, 1506, 1512, 1964, 2071, 2773, 28 U.S.C.A. § 631(i), U .S.C. 1st, 5th, 14th Amendments |
| 4/1/98 | 97–CV–7241 *Enright v. Vasile*, Index No. 93–18131 February 20, 1998 | Arrest of "Yellon–Gang–Leader" Norman L. Yellon |
| 4/2/98 | 97–CV–7241 *Enright v. Vasile*, Index No. 93–18131 | February 20, 1998 Arrest of "Yellon–Gang–Leader" Norman L. Yellon |
| 4/7/98 | 96–CV–3640 | Justification of my Order to Show Cause |
| 4/11/98 | 96–CV–3640 | Opposition to Defendant Austin's April 9th Letter–Motion For an Injunction and Security Posting of at Least $5,000 |
| 4/14/98 | 98–CV–2927 | Notice of Removal Pursuant to 28 U.S.C. § 1446(a) |
| 4/16/98 | 98–CV–2927 | Notice to the Clerk of the Court |
| 4/20/98 | 98–CV–2927 | Third–Party Verified Complaint With Counter–Claim |
| 4/20/98 | 98–CV–2927 | Notice of Appearance Verified Answer With Counterclaim |
| 4/25/98 | 97–CV–7241 97–CV–2927 97–CV–6848 96–CV–3640 | Request to Move the Court to Punish Weiss & His Confederates for Criminal Misconduct and Conspiracy to Violate This Court's Stay of Discovery [97–CV–7241] & In Opposition to Weiss' April 24th *Letter–Motion* & In Further Support of My Applications Pending Before This Court |
| 5/4/98 | 96–CV–3640 97–CV–7241 97–CV–6848 98–CV–2927 96–CV–620 | Order to Show Cause for Contempt, A Protective Order, Partial Summary Judgment & in Support of Order to Show Cause Pending in 96–CV–3640, Pursuant to F.R.C.P. Rules 56(a), 60(b)(2)(3), 26(c), 28 U.S.C.A. § 2521(b)(3), 18 U.S.C.A. §§ 4, 1001, 42 U.S.C.A. §§ 1983, U.S.C. Amendments: IV, V, XIV |
| 5/5/98 | 96–CV–3640 | Stamped Summary Order of the Second Circuit (see appendix 1) |
| 5/6/98 | 96–CV–3640 | Notice of Motion to Vacate Judgment pursuant to F.R.C.P. Rule 60(b)(2)(3) & Temporary Restraining Order Pursuant to F.R.C.P. Rules 11, 65, 42 U.S.C.A. §§ 1983, 1985, 18 U.S.C.A. §§ 4, 1001, 1501, 1506, 1512, 1964, 2071, 2773 28 U.S.C.A. § 631(i), U.S.C. 1st, 5th, 14th Amendments |
| 5/12/98 | 97–CV–7987 | Show Cause Per May 4, 1998 Summary Order |
| 5/12/98 | 96–CV–3640 98–CV–2927 | Opposition to Weiss' Letter–Motion Dated May 12, 1998 & In Further Support of the Relief Requested in My Letter Dated April 25th in Opposition to Weiss' April 24th Letter–Motion |
| 5/13/98 | 98–CV–2927 97–CV–7241 97–CV–6848 96–CV–3640 | Request for Nullification of Forged Request for Judicial Intervention Used to Commence *Enright v. Vasile*, Suffolk County Index # 93–18131 |
| 5/15/98 | 98–CV–2927 | Order to Show Cause For Partial Summary Judgment Pursuant to F.R.C.P. Rule 56(a), 18 U.S.C.A. §§ 4. 1001. 1964 42 U.S .C. §§ 1983 U.S.C. Amendments: V, XIV |
| 5/18/98 | 97–CV–7241 | Notice of Motion Answer to Cross–Complaint by Defendant Norman P. Weiss with Memorandum of Law & For Partial Summary Judgment Pursuant to F.R.C.P. Rule 56(a) |

to inundate the Court even though he was warned to discontinue this practice and ordered on February 2, 1998, to submit all documents directly to the Court for approval and not to personally file with the Clerk of the Court.

Typical of his insubordinate and devious "legal legerdemain" are Vasile's attempts to remove the numerous state court actions, whether pending or closed, to this Court, in a further endeavor to obfuscate the prior adjudications. On July 23, 1996, Vasile's first federal suit in front of this Court, 96–CV–3640, was commenced. On August 28, 1996, Magistrate Judge Boyle issued an order recommending, *inter alia*, the denial of Vasile's request to remove all related pending state cases to federal court, because the procedural requirement that removal of a state civil action may only be filed by a defendant within 30 days from the date of service of the initial summons or complaint, 28 U.S.C. § 1446(b), had been violated. Having been apprised of the applicable law barring removal, Vasile cannot hide behind his *pro se* status. Yet, on November 11, 1997, Vasile initiated a new federal lawsuit, *Carmine Vasile v. Sheila Enright*, 97–CV–6848, and filed a notice of removal for New York State Court action, *Sheila F. Enright, f/k/a Sheila F. Vasile v. Carmine F. Vasile*, Index No. 93–18131. On December 9, 1997, Vasile initiated the instant action, *Vasile v. Dean Witter, et al.*, 97–CV–7241, and on January 13, 1998, Vasile moved to remove four New York State court actions denominated: (1) *Sheila F. Enright, f/k/a Sheila F. Vasile v. Carmine F. Vasile*, Index No. 92–7421; (2) *Sheila F. Enright, f/k/a Sheila F. Vasile v. Carmine F. Vasile*, Index No. 92–18064; (3) *Sheila F. Enright, f/k/a Sheila F. Vasile v. Carmine F. Vasile, Reynold C. Graves, individually and Graves & Darbee, Esqs.*, Index No. 92–6009; and (4) *Sheila F. Enright, f/k/a Sheila F. Vasile v. Carmine F. Vasile*, Index No. 93–181328 (also listed as 93–18131). In so doing, Vasile was attempting to remove the same state court action simultaneously, and to remove prior state court actions which were previously adjudicated, appealed and closed. Although it was self-evident that the thirty day window of opportunity of 28 U.S.C. § 1446(b) had long passed, and therefore removal was procedurally barred, Vasile proceeded nonetheless. By Order dated January 12, 1998, this Court denied Vasile's motion to remove four state court actions to the instant action, and by Order dated January 16, 1998, this Court denied Vasile's removal motion under case number 97–CV–6848, and closed the case. Undaunted, Vasile brought an Order to Show Cause and a Temporary Restraining Order challenging the two Orders denying removal, because, the original service on the state court actions was defective due to false notarizations, and therefore the actions were never duly commenced. The Court denied the requested relief by Order, dated January 21, 1998. Not one to suffer defeat lightly, once again, only days later, Vasile brought another Order to Show Cause requesting a Temporary Restraining Order and an Order to Punish, and pursuant to Rule 60, based upon a mistake of fact, he moved to set aside the Judgment. A hearing was held on February 2, 1998, and Plaintiff's motions were denied and Vasile was enjoined from filing further motions, petitions, applications, complaints, or documents of any kind without prior authorization of the Court. This restriction was placed on 97–CV–6848, even though the case was closed, and 97–CV–7341, the case at bar. In addition, costs and attorneys' fees were imposed on Vasile.

On April 16, 1998, Vasile was back at the clerk's office, attempting to initiate another new action, 98–CV–2927. Once again, Vasile attempted to evade the injunctive restriction on filing documents related to pending litigations without court approval, Vasile placed a new caption on an old action and asserted a third party action while removing New York State Court action, index number 92–7421, to federal court. All the while Vasile was eminently aware of this Court's Order dated January 12, 1998, denying removal of that same case, 92–7421, and the Court's numerous prior Orders denying removal based upon the procedural bar, and in so doing, Carmine Vasile exhibited his utter and complete disregard and disrespect for the lawful authority of the Court.

When a *pro se* litigant, uneducated in the law, initiates an action in good faith, based upon a viable claim with factual support, the

Court will make every effort to ensure that the courthouse doors remain open for adjudication of his claim. However, when a litigant disregards repeated rulings of the Court, and spews venomous accusations concerning all who cross his path, as is Vasile's custom, the Court is obligated to end this unyielding obdurate assault on the judicial process.

Further evidence of Vasile's flouting of court orders is his response to the Summary Order of the Second Circuit Court of Appeals, dated May 4, 1998, affirming this Court's denial of Vasile's Rule 59 and Rule 60 motions to amend the judgment dismissing the complaint in the initial lawsuit, 96–CV–3640. The Second Circuit also sanctioned Vasile $2500.00 to compensate appellees for the obligation to defend a frivolous appeal. As evident in Appendix A, annexed hereto, Vasile stamped in bold red print and large lettering across both pages of the Order, the following:

### REJECTED

### NOT SIGNED BY A JUDGE

### APPOINTED BY THE PRESIDENT

### OF THE UNITED STATES

The Order was signed by the Deputy Clerk of the Court, the regular procedure for summary orders. Whether intended to illustrate his disdain, or a manifestation of some unknown malady, Vasile is stalwart in opposition.

As noted by Judge Sweet, "special solicitude for the difficulties that a *pro se* plaintiff must face does not extend to the wilful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights." *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988)(quoting district court opinion). The Second Circuit affirmed the district court's *sua sponte* dismissal, observing that "all litigants, including *pro ses,* have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions." *Id.*

Sanctions may be authorized by any of a number of rules or statutory provisions, or may be permissible on the basis of the court's inherent power. These various sources of authority are governed by differing standards. *See In re Ames Dept. Stores, Inc.,* 76 F.3d 66, 70 (2d Cir.1996). A court imposing sanctions is obliged to explain its sanctions order "with care, specificity, and attention to the sources of its power." *MacDraw, Inc. v. CIT Group Equipment Financing, Inc.,* 73 F.3d 1253, 1262 (2d Cir. 1996).

The person to be sanctioned must have been placed on notice that sanctions may be imposed. *In re Ames Dept. Stores, Inc.,* 76 F.3d at 70. Further, notice is required irrespective of the form of sanction, be it financial or a filing injunction. *See Moates v. Barkley,* 147 F.3d 207 (2d Cir. 1998); *Board of Managers of 2900 Ocean Ave. Condominium v. Bronkovic,* 83 F.3d 44, 45 (2d Cir.1996)(per curiam).

1. *Rule 11*

Rule 11 of the Federal Rules of Civil Procedure,[6] reproduced herein, provides

---

**6.** *Rule 11. Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions*

 (a) *Signature.* Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

 (b) *Representations to Court.* By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

 (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

 (2) the claims, defenses, and other legal contentions therein are warranted by existing law or

the minimal threshold requirement for all documents presented to the court, whether offered by counsel or the party.

The Court will consider a Rule 11 motion for sanctions if that motion is made separately from other motions or requests and the safe harbor provision is followed, allowing the litigant an opportunity to withdraw or correct the challenged paper, claim, defense, contention, allegation, or denial, prior to moving for sanctions. Fed.R.Civ.P. 11(c)(1)(a). In this action, Defendant Weiss notified Vasile by letter that he intended to move pursuant to Rule 11 for sanctions if Vasile did not withdraw his claim. Vasile did not relent, choosing instead to further malign Defendant Weiss. As far back as August 8, 1996, at a hearing, this Court read into the record the language of Rule 11 and warned Vasile of the possibility of sanctions for frivolous and malicious litigation.

██ Rule 11 permits a court to impose sanctions on a *pro se* litigant who violates Rule 11. *See Jones v. City of Buffalo*, 1998 WL 214807, at *3, *4 (W.D.N.Y. April 22, 1998); *Jemzura v. Public Service Com'n*, 961 F.Supp. 406, 414–15 (N.D.N.Y.1997); *Williams v. Revlon Co.*, 156 F.R.D. 39, 43–45 (S.D.N.Y.1994); *see also Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir.1988) ("*pro se* filings do not serve as an 'impenetrable shield [from the application of Rule 11], for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets'") (quoting *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir.1986)).

██ The sanctions which a court may impose may be monetary or non-monetary, but the choice should have reference to the conduct which warrants the sanction and must be carefully tailored based on the facts

by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) *Sanctions.* If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) *How Initiated.*

(A) *By Motion.* A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

(B) *On Court's Initiative.* On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

(2) *Nature of Sanction; Limitations.* A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

(3) *Order.* When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

(d) *Inapplicability to Discovery.* Subdivisions (a) through (c) of this rule do not apply to disclosures and discovery requests, responses, objec-

before the Court. The Advisory Committee Notes accompanying the 1993 Amendments to Rule 11 include factors to be considered when determining whether sanctions are warranted and, if so, the type and degree of any sanction that should be imposed. Those factors include: (1)[w]hether the improper conduct was willful, or negligent; (2) whether it was part of a pattern or activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case.

Applying these factors, it is clear that Vasile's conduct was willful and malicious, permeating his papers, filings, and throughout his prior and present state and federal court litigation. The conduct presently constitutes a pattern rising to the level of a personal crusade, resulting in the delayed resolution and enforcement of the default judgment, and the expenditure of thousands of dollars in legal fees by his opposition and thousands of hours in processing and deciding his motions and pleadings. Although Vasile is not formally trained in the law, he invests abundant hours in this personal crusade. Nevertheless, the Court has taken into account Vasile's lack of formal training or understanding of the law. *See Horton v. Trans World Airlines Corp.*, 169 F.R.D. 11, 16 (E.D.N.Y.1996) ("Pro se litigants are held to a more lenient standard than professional counsel, with Rule 11's application determined on a sliding scale according to the litigant's level of sophistication.").

As for the final factor, the Court is unaware of the amount of money, if any, that would bring Vasile's relentless attack to an end. Nonetheless, a substantial sanction is needed to send Carmine Vasile a message that this litigation must be set to rest. Accordingly, for Vasile's willful and knowing violation of Rule 11, in the face of numerous admonitions, and his deliberate disregard of lawful orders of the court, the Court hereby sanctions Carmine Vasile $10,000.00, to be paid within 90 days of the first of the following triggering events: (1) the Bankruptcy Court's lifting or termination of the automatic stay provision of 11 U.S.C. § 362; (2) the Bankruptcy Court's Order confirming the plan of reorganization; (3) the Bankruptcy Court's Order dismissing Vasile's petition for bankruptcy relief; or (4) any other Order or Decree of the Bankruptcy Court, whether final or interlocutory, or challenged on appeal, which results in the termination of Vasile's bankruptcy proceedings.

### 2. *Injunctive Sanction*

The authority for issuing injunctive sanctions derives from Rule 11, the All Writs Act, 28 U.S.C. § 1651,[7] and the Court's inherent power to "manage their own proceedings ... to control the conduct of those who appear before them ... [and] to punish conduct which abuses the judicial process." *Chambers,* 501 U.S. at 33, 111 S.Ct. at 2126.

This Court may have been overly patient and optimistic in not imposing sanctions sooner, however, Vasile's history of ignoring court orders suggests that he will disregard this Memorandum and Order. In contemplation of that probability the Plaintiff is forewarned, a failure to abide by the terms of this Order will result in contempt proceedings. Plaintiff is further put on notice that the Court will not accept any further filing or motions pertaining to this case, including motions pursuant to Rule 59 or Rule 60, or motions captioned "New Evidence," "Mistake of Fact," "Motion for Reconsideration," or "Motion to Punish," etc., and additional sanctions will be imposed for each such violation. Plaintiff's *sole* recourse at this juncture is to

---

tions, and motions that are subject to the provisions of Rules 26 through 37.

**7.** *Writs*

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

(b) An alternative writ or rule nisi may be issued by a justice or judge or a court which has jurisdiction.

appeal this decision to the Second Circuit Court of Appeals.

Finally, Plaintiff is advised that he will be entitled to submit one motion in response to the Defendants' motion and supporting affidavits for attorneys' fees and costs, and that motion must be limited to the appropriate amount of costs and fees to which the Defendants are entitled. All other issues raised will be irrelevant and will not be considered.

Accordingly, absent prior approval of this Court after review by a Magistrate Judge of this courthouse, Carmine Vasile is hereby forever enjoined from (1) initiating any new civil actions in the United States District Court for the Eastern District of New York against any of the following party defendants, Sheila Enright, f/k/a Sheila Vasile, Leonard B. Austin, Honorable William L. Underwood, Jr., Honorable Alan D. Ohrin, James C. Hudson, Norman P. Weiss, and Dean Witter Reynolds, Inc.; (2) initiating any new civil action in the United States District Court for the Eastern District of New York without complying with the following procedure and receiving prior approval of the Magistrate Judge. The new complaint must be accompanied by: (i) a motion captioned, "Motion Pursuant to Court Order Seeking Leave to File;" (ii) a copy of this Order; (iii) a sworn affidavit by Vasile certifying that the claim has never been raised by him in any court; (iv) a list of the full caption of each and every suit previously filed by Vasile, or filed on his behalf, in any court against each and every defendant to the suit he wishes to file and if there are such prior suits he must include a copy of the complaint and a certified record of each disposition; (v) proof of service that a copy of this order was served on each defendant, if and when leave to serve the complaint in the new case is granted. After receipt of the complaint with the aforementioned requirements, the Magistrate Judge will issue a Report and Recommendation to this Court detailing the claims raised, whether the matter has been previously adjudicated by any court in any forum, and whether the claims are timely and appear meritorious with evidentiary support; (3) filing any further documents, motions, applications, letters or other submissions with this Court pertaining to the following closed actions, 96–CV–3640, 97–CV–6848, 97–CV–7241, and 98–CV–2927; (4) in the event Carmine Vasile initiates an action in the New York State Court system, and the defendants thereto remove the case to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. §§ 1441, 1442, 1442(a), 1443, or 1444, Vasile is required to obtain leave of this Court to continue the action. Vasile must file, within 30 days from the date of removal, an "Application for Leave of Court to Continue Action," certifying, under penalty of further sanctions, that the claims asserted are new claims that have not been previously raised and disposed of by any court, and that the claims are not frivolous, malicious, or raised in bad faith; (5) violation of this injunction will result in further sanctions and all documents or motions served by Vasile in violation hereof, is hereby deemed a nullity, and no party need file a response thereto; (6) this injunction does not apply to the following two pending actions, 98–CV–3835, and 98–CV–4898, although frivolous or malicious filings will not be tolerated; (7) nothing in this Order shall be construed as denying Carmine Vasile access to the United States Second Circuit Court of Appeals.

### 2. Costs and Attorneys' Fees

 Although the "American Rule" prohibits the shifting of attorney's fees in most cases, see *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975), an exception allows federal courts to exercise their inherent power to assess such fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Id.*, at 258–259, 260, 95 S.Ct. at 1622–1623, 1623. "Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). Mr. Vasile has been previously forewarned that fees and costs will be imposed for further frivolous filings and contumacious conduct, and in fact, fees and costs have been previously imposed by this Court and the Second

Circuit Court of Appeals. Accordingly, the Court is hereby authorizing the Defendants in the instant action to move the Court for costs and attorneys fees within 60 days of the first of the following triggering events: (1) the Bankruptcy Court's lifting or termination of the automatic stay provision of 11 U.S.C. § 362; (2) the Bankruptcy Court's Order confirming the plan of reorganization; (3) the Bankruptcy Court's Order dismissing Vasile's petition for bankruptcy relief; or (4) any other Order or Decree of the Bankruptcy Court, whether final or interlocutory, or challenged on appeal, which results in the termination of Vasile's bankruptcy proceedings. The motion must include affidavits and contemporaneous records, calculated in compliance with the lodestar method detailing the hours expended and the applicable billing rate, and the costs incurred, in defending the instant litigation. The plaintiff should be served and will have 30 days in which to respond, as delineated *supra*.

### CONCLUSION

Having fully reviewed the allegations raised in Carmine Vasile's complaint and moving papers, and having afforded this *pro se* plaintiff's claims a liberal construction, *see Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (pleadings of *pro se* plaintiff read liberally and interpreted "to raise the strongest arguments that they suggest"), the Court is required to dismiss this action in its entirety with prejudice. As a matter of law, Carmine Vasile has failed to satisfy the threshold showing required to defeat a motion to dismiss or a motion for summary judgment. In addition, because Carmine Vasile has been forewarned that sanctions would be imposed for his persistent proffering of previously decided claims and his incessant motion practice, and because nonetheless, Vasile continued unabated, the Court will issue sanctions and award fees and costs.

Accordingly, it is hereby:

ORDERED, Plaintiff Carmine Vasile's numerous motions for partial and complete summary judgment are all denied in their entirety with prejudice;

ORDERED, Plaintiff Carmine Vasile's motion to punish is denied in its entirety with prejudice;

ORDERED, Defendant Dean Witter's motion to dismiss the complaint in its entirety with prejudice is granted;

ORDERED, Defendant Norman Weiss' motion for sanctions is granted, subject to the limitations contained in this Memorandum and Order;

ORDERED, Defendant Norman Weiss' motion to dismiss the complaint in its entirety with prejudice is granted;

ORDERED, Defendant Norman Weiss' motion in opposition to Plaintiff's motion for summary judgment is granted in its entirety with prejudice;

ORDERED, the motion of Defendants, the Honorable Alan D. Oshrin and the Honorable William L. Underwood, Jr., to dismiss the complaint with prejudice is granted in its entirety with prejudice;

ORDERED, the motion of Defendants, the Honorable Alan D. Oshrin and the Honorable William L. Underwood, Jr., for summary judgment is granted in its entirety with prejudice;

ORDERED, Plaintiff Carmine Vasile is hereby enjoined from filing any motions, applications, documents, or other submissions pertaining to the following closed cases, 96–CV–3640, 97–CV–6848, 97–CV–7241, and 98–CV–2927;

ORDERED, Plaintiff Carmine Vasile is hereby enjoined from initiating any civil actions in the Eastern District of New York without prior approval of a Magistrate Judge of this courthouse, and in accordance with the specific terms of this Order. A failure by Carmine Vasile to abide by this directive will result in the immediate dismissal of the action and additional sanctions;

ORDERED, Plaintiff Carmine Vasile, for his repeated filing of frivolous vexatious motions and lawsuits, is hereby sanctioned in the amount of $10,000.00, to be paid to the Court within 90 days of the first of the following triggering events: (1) the Bankruptcy Court's lifting or termination of the automatic stay provision of 11 U.S.C. § 362; (2) the Bankruptcy Court's Order confirming the plan of reorganization; (3) the Bankruptcy Court's Order dismissing Vasile's petition for bankruptcy relief; or (4) any other Order or Decree of the Bankruptcy Court, whether

final or interlocutory, or challenged on appeal, which results in the termination of Vasile's bankruptcy proceedings;

Accordingly, because all motions have been decided, the Clerk of the Court is directed to close all motions presently recorded as pending and to enter final Judgment closing the above captioned action, docketed as case number 97–CV–7241, dismissing all claims of petitioner Carmine Vasile in their entirety with prejudice, subject to a determination at a later date of the appropriate amount of costs and attorneys fees to which the Defendants are entitled.

The Clerk of the Court is further directed to not docket any further entries, or accept any new submissions, motions, petitions, affidavits, letters or documentation of any form under case number 97–CV–7241 from Plaintiff Carmine Vasile.

SO ORDERED.